Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

Thad C. Kodish (admitted *pro hac vice*)
tkodish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5002

Kristen McCallion (admitted *pro hac vice*)
mccallion@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

***Attorneys for Defendants***
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DUA LIPA,

Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD. and DOES 1-10, inclusive,

Defendants.

CASE NO. 2:26-cv-05019-CAS-MAR

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

| | |
|---|---|
| Hearing Date | December 14, 2026 |
| Hearing Time: | 10:00 a.m. |
| Courtroom: | 8D |
| Judge: | Hon. Christina A. Snyder |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. ARGUMENT ..... 3

A. Plaintiff Fails to State a Claim for Trademark Infringement or False Endorsement under the Lanham Act (Count III) or Common Law (Count IV) ..... 3

1. Plaintiff does not, and cannot, hold a trademark in her own image or likeness ..... 4

2. Because the Court should dismiss Plaintiff's direct trademark infringement claims (Counts III and IV), it must also dismiss the contributory trademark infringement claim against SEC (Count V) ..... 6

3. The Complaint as a whole does not plead facts establishing false endorsement ..... 7

B. Plaintiff Fails to State a Claim Against SEC for Vicarious Copyright Infringement (Count II) or Vicarious Trademark Infringement (Count VI) ..... 11

1. Vicarious liability requires that SEC controlled the allegedly infringing activity ..... 11

2. Plaintiff fails to allege facts establishing SEC's control of the alleged infringement ..... 12

C. The Right of Publicity Claims (Counts VII and VIII) Fail to State a Claim Because England Does Not Recognize a Right of Publicity ..... 16

1. California's default choice-of-law rule for personal property independently requires application of English law ..... 17

2. California's governmental interest test independently requires application of English law ..... 18

3. The Complaint's own allegations establish that Plaintiff is domiciled in the United Kingdom ..... 19

D. The entire Complaint must be dismissed as an impermissible shotgun pleading ....................20

1. The Complaint fails to specify which defendant allegedly did what ....................21

2. The Complaint indiscriminately incorporates allegations by reference ....................23

IV. CONCLUSION ....................23

**CERTIFICATE OF COMPLIANCE** ....................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 8, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7, 12

*Bi-Rite Enters., Inc. v. Bruce Miner Co.*,
757 F.2d 440 (1st Cir. 1985)....................19

*Bondar v. LASplash Cosmetics*,
2012 WL 6150859 (S.D.N.Y. 2012)....................6

*Brown v. Elec. Arts, Inc.*,
No. 2:09-CV-01598-FMC, 2009 WL 8763151 (C.D. Cal. Sept. 23, 2009), *aff'd*, 724 F.3d 1235 (9th Cir. 2013)....................10

*Cairns v. Franklin Mint Co.*,
107 F. Supp. 2d 1212 (C.D. Cal. 2000)....................7, 17

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002)....................7, 17

*Davis v. Elec. Arts Inc.*,
775 F.3d 1172 (9th Cir. 2015)....................17

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001)....................19

*ETW Corp. v. Jireh Publishing, Inc.*,
332 F.3d 915 (6th Cir. 2003)....................4, 5, 6

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011)....................12

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
688 F. Supp. 2d 1148 (D. Nev. 2010)....................1, 5, 6, 7

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015)....................5

*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 (2007) ........ 16

*Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026) ........ 20, 21, 22, 23

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ........ 12

*In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903 (N.D. Cal. 2025) ........ 11, 12, 14, 15

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992) ........ 12

*Jackson v. Odenat*, 9 F. Supp. 3d 342 (S.D.N.Y. 2014) ........ 6

*Johnson v. Maraj*, No. 23-cv-05061-PA-AFMx, 2023 WL 8883316 (C.D. Cal. Dec. 15, 2023) ........ 7

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ........ 16

*Khachatryan v. 1 Hotel West Hollywood LLC*, No. 2:23-cv-10829-ODW (Ex), 2024 WL 3015504 (C.D. Cal. June 14, 2024) ........ 22

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ........ 9

*Lightbourne v. Printroom Inc.*, 307 F.R.D. 593 (C.D. Cal. 2015) ........ 17, 18

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ........ 17, 18, 19

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) ........ 23

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........ 11

*Miller v. Easy Day Studios Pty Ltd.*,
No. 20CV02187-LAB-DEB, 2021 WL 4209205 (S.D. Cal. Sept. 16, 2021) .......... 9, 10

*Modern Floor Specialists, Inc. v. City of Los Angeles*,
No. 2:25-cv-04765-ODW (JPRx), 2026 WL 915292 (C.D. Cal. Apr. 3, 2026) .......... 22

*Page v. Something Weird Video*,
908 F. Supp. 714 (C.D. Cal. 1995) .......... 18

*Parks v. LaFace Records*,
329 F.3d 437 (6th Cir. 2003) .......... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 6, 11

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .......... 11, 12, 14, 15

*Pirone v. MacMillan, Inc.*,
894 F.2d 579 (2d Cir. 1990) .......... 5, 6

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) .......... 14

*Sims v. Opportunity Fin., LLC*,
No. 20-CV-04730-PJH, 2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) .......... 15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 8, 10

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 8

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) .......... 23

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 22

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) .......... 12

**Statutes**

Cal. Civ. Code § 946 .......... 16, 17

Cal. Civ. Code § 3344 .......... 17

Lanham Act § 43(a) .......... 4, 6

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .......... 20

Fed. R. Civ. P. 10 .......... 20

# I. INTRODUCTION

Plaintiff's Complaint alleges Defendants made unauthorized use of a photograph of Plaintiff on the packaging of certain Samsung TVs. Based on that core allegation, Plaintiff asserts eight causes of action. Plaintiff, however, fails to state any valid claim for relief, and the Court should dismiss the Complaint for four reasons.

First, Plaintiff's Complaint fails to state a claim for direct trademark infringement or false endorsement under either the Lanham Act (Count III) or common law (Count IV), or for contributory trademark infringement (Count V). As to direct trademark infringement, Plaintiff's allegations fail as a matter of law because she asserts that she "holds valid and protectable trademark rights in her brand, image, and likeness . . . ." Compl. ¶ 61. But courts have consistently held that "a person's image or likeness ***cannot*** function as a trademark[.]" *See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148, 1159 (D. Nev. 2010) (emphasis added, internal quotation marks omitted). This same failure dooms Plaintiff's contributory infringement claim (Count V), because it is derivative of the legally defective trademark infringement theory pleaded in Counts III and IV. Plaintiff's false endorsement theory fares no better. The Complaint's allegations—including the image of the accused product packaging displayed in the Complaint—contradict her conclusory assertion that consumers would be confused into believing she endorsed Samsung's products, as a false endorsement claim requires.

Second, Plaintiff's vicarious copyright infringement (Count II) and vicarious trademark infringement (Count VI) claims against Samsung Electronics Co., Ltd. ("SEC") fail to state a claim because she does not allege facts establishing that SEC controlled the alleged infringement of its subsidiary, Samsung Electronics America, Inc. ("SEA"). The Complaint's conclusory vicarious liability allegations rest almost entirely on facts consistent only with SEC's and SEA's ordinary parent-subsidiary relationship, which is legally insufficient to establish the control required for vicarious infringement.

Third, the Complaint's right of publicity causes of action (Counts VII and VIII) fail to state a claim because choice-of-law principles dictate that English law must apply, and England does not recognize a right of publicity.

Fourth, the entire Complaint represents an impermissible "shotgun" pleading. The Complaint frequently fails to distinguish between the alleged conduct of Defendants SEC and SEA, leaving each entity's alleged conduct unidentified. And the Complaint broadly incorporates every allegation into each successive cause of action, making it impossible for Defendants or the Court to determine which allegations are germane to each count.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff's Complaint centers on a single photograph (the "DL Image"). Compl. ¶¶ 7, 28. Plaintiff alleges that Defendants used the photograph without her authorization on packaging for certain televisions. As excerpted below, the Complaint depicts the photograph on the TV packaging within a rendering of the TV's home screen interface. The Complaint shows the DL Image as a background associated with a "Samsung TV Plus" music video channel called "XITE HITS." *Id.* ¶ 6. Below the XITE HITS display with the DL Image, the home screen includes other, separately labeled icons for available channels or apps, including "ABC NEWS LIVE," "FOX SPORTS," "THE FIRST 48 BY A&E," and "MLB." *Id.* ¶¶ 6, 35. Plaintiff alleges the use of the DL Image "induced potential consumers to buy" the televisions, citing two social media comments. *Id.* ¶¶ 34–35.




Compl. ¶ 6.

The Complaint asserts eight causes of action: copyright infringement (Count I); vicarious copyright infringement against SEC (Count II); false endorsement and trademark infringement (Count III); common law trademark infringement (Count IV); contributory (Count V) and vicarious (Count VI) trademark infringement against SEC; and statutory and common law right of publicity (Counts VII–VIII). Each count incorporates every preceding paragraph and cause of action. *Id.* ¶¶ 41, 49, 60, 68, 76, 86, 96, 105. Other than in the vicarious and contributory infringement causes of action against SEC, Plaintiff's allegations are pleaded generically against "Defendants," without specifying which Defendant allegedly performed which acts.

## III. ARGUMENT

### A. Plaintiff Fails to State a Claim for Trademark Infringement or False Endorsement under the Lanham Act (Count III) or Common Law (Count IV)

Count III purports to allege both "trademark infringement" and "false endorsement" under the Lanham Act, while Count IV asserts common law trademark infringement and Count V asserts contributory trademark infringement. Neither

Plaintiff's trademark infringement theory nor her false endorsement theory states a claim for relief. Plaintiff's direct trademark infringement theory fails as a matter of law because she has not pleaded the existence of a protectable mark. Plaintiff's contributory infringement claim therefore fails because the Complaint does not plead a viable underlying act of direct trademark infringement. And, as to Plaintiff's false endorsement claim, which requires consumer confusion as to whether Plaintiff endorses Defendants' products, the Complaint's allegations taken as a whole contradict the suggestion that consumers could be confused into believing she endorses Samsung TVs.

**1. Plaintiff does not, and cannot, hold a trademark in her own image or likeness**

Plaintiff alleges that she "holds valid and protectable common law trademark rights in her brand, image, and likeness, which are inherently distinctive and recognizable to consumers." Compl. ¶ 69; *see also id.* ¶ 30. Courts have squarely rejected this theory, holding that one's image or likeness cannot constitute a protectable trademark unless it has been consistently used as a trademark in connection with the sale of specific goods.

For example, in *ETW Corp. v. Jireh Publishing, Inc.*, the Sixth Circuit held that professional athlete Tiger Woods did not hold trademark rights in his own image or likeness. 332 F.3d 915, 922 (6th Cir. 2003). In that case, the defendant sold limited edition prints of a painting depicting golfer Tiger Woods winning the 1997 Masters Tournament. *Id.* at 919-20. The plaintiff, Tiger Woods' licensing agent, claimed the defendant's prints constituted unauthorized use of Tiger Woods' image and likeness in violation of Section 43(a) of the Lanham Act. Rejecting that theory, the court held that it is "untenable" that a person could claim Lanham Act protection for any and all images of himself, which would "in effect . . . constitute Woods himself as a walking, talking trademark." *Id.* at 922. Instead, the court held that, "as a general rule, a

person's image or likeness cannot function as a trademark," because it identifies the person, not the source of any particular goods or services. *Id.* at 922–23.

The Second Circuit reached the same conclusion for another professional athlete in *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990). There, Babe Ruth's estate alleged trademark infringement based on the defendant's use of three photographs of Ruth in a baseball-themed weekly calendar. *Id.* at 581. Similar to Plaintiff, Ruth's estate alleged that it owned "valid, protectible trademark rights in the image and name of Babe Ruth." *Id.* at 582. The court found that Ruth's estate's "position finds support in neither precedent nor common sense." *Id.* "[A] photograph of a human being, unlike a portrait of a fanciful cartoon character, is not inherently 'distinctive' in the trademark sense of tending to indicate origin," because "an individual's likeness is not a consistently represented fixed image." *Id*. at 583.

A district court within this Circuit reached the identical conclusion for a recording artist. In *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, Bob Marley's estate accused the defendant of trademark infringement in connection with the licensing of t-shirts and other products depicting images of Bob Marley's face. *Fifty-Six Hope Road,* 688 F. Supp. 2d at 1152-54; *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015) (affirming judgment as to other claims and describing accused products). Marley's estate argued that its registered word mark "BOB MARLEY" extended to any visual depiction of him. *Id*. at 1158. The court rejected that theory, explaining: "Every court to consider the issue has held there is no cognizable trademark in every single photograph ever taken of a famous person." *Id.* (citing *ETW* and *Pirone*). The court recognized a narrow exception: a specific photograph may function as a trademark where it, and it alone, "consistently is used as a source indicator." *Id. at 1160.* However, that exception was inapplicable because

there was no allegation that the specific image of the plaintiff had been consistently used as a source indicator. *Id.* Nor does Plaintiff make such an allegation here.[1]

Plaintiff does not, and cannot, plead the narrow circumstance these courts have identified as the sole path to protection: that the one specific photograph at issue here, as cropped and printed on the allegedly infringing products, has been consistently used by Plaintiff herself as a source identifier for particular goods or services. The Complaint alleges only generalized rights in her "brand, image, and likeness" at large, Compl. ¶ 61, the same theory rejected for the professional athletes in *ETW* and *Pirone* and the recording artist in *Fifty-Six Hope Road*.

Because Plaintiff's trademark infringement theory rests on rights she does not hold, the Court should dismiss Count III's trademark infringement claim and the entirety of Count IV. *See, e.g., Fifty-Six Hope Road*, 688 F. Supp. 2d at 1158 (applying the same "cognizable trademark" analysis to both statutory and common law theories).

**2. Because the Court should dismiss Plaintiff's direct trademark infringement claims (Counts III and IV), it must also dismiss the contributory trademark infringement claim against SEC (Count V)**

Contributory trademark infringement requires an underlying act of direct trademark infringement. Absent a viable direct infringement claim, there is nothing to which secondary liability can attach. *Cf. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (secondary liability cannot exist in the absence of direct infringement by a third party). Courts accordingly dismiss secondary liability

[1] Some courts have described celebrities as having a 'trademark-like interest' in their identity sufficient to confer standing for a false endorsement claim under §43(a). *See, e.g., Parks v. LaFace Records*, 329 F.3d 437, 459 (6th Cir. 2003); *Bondar v. LASplash Cosmetics*, 2012 WL 6150859, at *5 (S.D.N.Y. 2012); *Jackson v. Odenat*, 9 F. Supp. 3d 342, 355 (S.D.N.Y. 2014). That principle is distinct from, and does not disturb, the settled rule that a photograph or likeness does not itself constitute a protectable trademark absent consistent use as a source indicator for particular goods or services.

claims when the predicate direct-infringement claim is dismissed. *E.g., Johnson v. Maraj*, No. 23-cv-05061-PA-AFMx, 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023) (dismissing contributory and vicarious copyright infringement claims where the plaintiff failed to plead the predicate direct infringement).

Count V is predicated on the direct ***trademark*** infringement theories pleaded in Counts III and IV: Plaintiff alleges that "Defendants have directly and willfully infringed Plaintiff's trademark rights in her name, image, and likeness" (Compl. ¶ 77), and that SEC's conduct "constitutes contributory trademark infringement" as to that direct infringement (*id.* ¶ 82). As explained above, Plaintiff cannot state a claim for direct trademark infringement, because "[e]very court to consider the issue has held there is no cognizable trademark in every single photograph ever taken of a famous person", *Fifty-Six Hope Road,* 688 F. Supp. 2d at 1158 (dismissing trademark infringement claims based on use of Bob Marley's photograph on t-shirts). Therefore, Count V fails for the same reasons.

### 3. The Complaint as a whole does not plead facts establishing false endorsement

The Court should dismiss Count III's Lanham Act false endorsement claim, because Plaintiff's Complaint, taken as a whole and including the images therein, does not plausibly allege facts suggesting false endorsement. The Lanham Act "prohibits only false endorsement, not mere use of an image or name." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). "Only uses which suggest sponsorship or approval are prohibited." *Id.* To establish a false endorsement claim, "likelihood of customer confusion is the determinative issue." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002). As explained below, the packaging photograph depicted in the Complaint does not create that inference.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). A claim is facially plausible when factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Critically, in evaluating whether a complaint states a plausible claim for relief, a court need not accept conclusory allegations that are contradicted by other material within the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (affirming dismissal where document attached to complaint contradicted plaintiff's allegations); *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

Although Plaintiff's Complaint alleges in conclusory fashion that Defendants' use of the DL Image is likely to cause confusion (*see* Compl. ¶ 63), the Complaint itself elsewhere contradicts any suggestion that consumers could be confused into believing Plaintiff endorses Samsung televisions. The Complaint includes photographs of the complained-of use on Samsung TV packaging. Those photographs reveal that the DL Image appears only as part of a TV on-screen interface for a "Samsung TV Plus" music video channel called "XITE HITS."




Compl. ¶¶ 6, 35 (red box annotations added). The image appears adjacent to other interface options, including icons for other channels or content such as "ABC NEWS LIVE," "FOX SPORTS," "THE FIRST 48 BY A&E," and "MLB." *Id.* An interface depicting a music-video channel among several unrelated content icons conveys nothing suggesting Plaintiff endorses the televisions. The images merely depict the televisions' on-screen interface, illustrating the applications and content available on the device. Considered in its full context, the Complaint does not plausibly allege consumer confusion as to whether Plaintiff endorses the products. *See Knievel v. ESPN*, 393 F.3d 1068, 1077–78 (9th Cir. 2005) (a communication must be considered together with "all parts . . . that are ordinarily heard or read with it"). The packaging merely demonstrates an example of content available on the TV.

Courts have held that the mere use of a person's image in connection with a product does not plausibly suggest that consumers would be confused into believing that the person endorsed the product. For example, in *Miller v. Easy Day Studios Pty Ltd.*, the court dismissed a false endorsement claim brought by a prominent skateboarder who alleged the inclusion of a character based on his likeness in a video game and promotional materials for the game. No. 20CV02187-LAB-DEB, 2021 WL 4209205, at *8 (S.D. Cal. Sept. 16, 2021). Even though the plaintiff argued actual

confusion "because at least two individuals contacted [the plaintiff] after recognizing his character in the video game," the court concluded it failed to state a claim for false endorsement: "The issue here isn't whether other consumers could simply recognize [plaintiff's] likeness in the game, but rather whether they would be misled into believing his association with the game means he is somehow endorsing it." *Id.*; *see also Brown v. Elec. Arts, Inc.,* No. 2:09-CV-01598-FMC, 2009 WL 8763151, at *5 (C.D. Cal. Sept. 23, 2009) (dismissing false endorsement claim based on use of former NFL player's likeness in video game "where there are no explicit representations of endorsement to cause consumer confusion"), *aff'd*, 724 F.3d 1235 (9th Cir. 2013). So too here. The Complaint's allegation that Samsung's TV packaging included Plaintiff's image within an example of an on-screen interface does not plausibly suggest that consumers would believe Plaintiff endorses the TV.

Nor do the social media comments Plaintiff reproduces at paragraphs 34 and 35 make Plaintiff's allegation of confusion plausible. Neither comment says anything about endorsement, sponsorship, or affiliation. Rather, both comments read as familiar, tongue-in-cheek social media hyperbole ("I wasn't even planning on buying a tv but I saw the box so I decided to get it"; "if you need anything selling just put a picture of Dua Lipa on it"), not sincere assertions that anyone believed Ms. Lipa had approved of, or partnered with, Samsung. Nor can two anecdotal, informally worded comments support any broader inference about how consumers generally understood the DL Image's inclusion within the interface depicted. This Court is not bound to accept Plaintiff's own characterization of the very material she has chosen to include in her own pleading. *Sprewell*, 266 F.3d at 988 ("we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

**B. Plaintiff Fails to State a Claim Against SEC for Vicarious Copyright Infringement (Count II) or Vicarious Trademark Infringement (Count VI)**

The Court should dismiss Plaintiff's vicarious copyright and trademark infringement claims against SEC (Counts II and VI) because the Complaint fails to include factual allegations establishing a required element for vicarious liability: that SEC controlled SEA's alleged infringement. Although the Complaint includes conclusory allegations that SEC exercises the ordinary incidents of corporate parent-subsidiary relationships (e.g., SEC "directly participates in and influences key business decisions of SEA" (Compl. ¶ 19)), the mere existence of a parent-subsidiary relationship is insufficient to establish vicarious infringement liability. *In re Google Generative AI Copyright Litig*., 809 F. Supp. 3d 903, 918 (N.D. Cal. 2025).

**1. Vicarious liability requires that SEC controlled the allegedly infringing activity**

Both vicarious copyright and trademark infringement require that one party controls the alleged infringement of another. To state a claim for vicarious copyright infringement, "a plaintiff must establish that the defendant exercises the requisite control over the direct infringer . . . ." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1173. The control element requires "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Id.*; *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005) ("One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." (citations omitted)). "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007). Vicarious trademark liability requires that "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the

infringing product." *Id.* at 807 (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

The mere existence of a parent-subsidiary relationship is insufficient as a matter of law to establish the "control" required for vicarious copyright or trademark infringement. *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d at 918 ("[A] parent company may not be held vicariously liable for direct infringement by its subsidiary solely by virtue of the ordinary control that any parent company may exercise over its subsidiary."). Thus, to state a claim for vicarious copyright or trademark infringement, Plaintiff must plead facts showing that SEC possessed—and had the practical ability to exercise—control over the alleged direct infringement. *Id.* at 917 n.5 ("Plaintiffs also conflate the control that any parent company may exercise over its subsidiary with the right and practical ability to supervise infringing conduct.").

A complaint offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court does not have to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Measured against these standards, the Complaint's control allegations are precisely the "formulaic recitation" *Twombly* forecloses.

**2. Plaintiff fails to allege facts establishing SEC's control of the alleged infringement**

Plaintiff's allegations of control to support vicarious liability fall into three categories, none of which suffices to state a claim for relief: (1) reciting the legal element without any factual content (e.g., alleging SEC "had the right, authority and

ability to control the infringing activities" (Compl. ¶ 53)); (2) describing an ordinary parent-subsidiary relationship (e.g., alleging SEC "exercises substantial control over the operations and policies of SEA, Inc. and directly participates in and influences key business decisions" (*id.* ¶ 19)); and (3) non-specific speculation "on information and belief" (*id.* ¶¶ 19, 51, 78, 90).

Plaintiff's recitation of the required legal element—that SEC exercised control over SEA's allegedly infringing conduct—does not suffice to state a claim for relief. For example, as to vicarious copyright infringement, Plaintiff states her assumption that SEC, as the parent corporation, can be presumed to have exercised "substantial control over and direct participation and influence over key business decisions of its subsidiary SEA, Inc." Compl. ¶ 51. Similarly, the Complaint asserts that SEC must also have exercised such control "with respect to the creation, approval, licensing, and distribution of the Infringing Products" (*id.*) and further concludes, without any factual allegations in support, that SEC "had the right, authority and ability to control the infringing activities" (*id*. at ¶ 53). For her vicarious trademark infringement claim, Plaintiff alleges—again without any factual allegations in support—that SEC and SEA "exercise joint ownership and control over the Infringing Products" (*id*. at ¶ 88) because SEC, again by definition as the parent entity, has "substantial control over and direct participation and influence over key business decisions of its subsidiary and agent SEA, Inc." (*id*. at ¶ 89). Because these allegations do nothing more than parrot the required control element for vicarious liability, without pleading any facts in support, they do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Where the Complaint ventures beyond repeating the bare legal control element, it alleges only the unremarkable features of corporate ownership, which is insufficient to establish vicarious liability. For example, Plaintiff alleges that SEC is "the parent company of SEA, Inc." and "exercises substantial control over the operations and

policies of SEA, Inc. and directly participates in and influences key business decisions." Compl. ¶¶ 18–19. But "a parent company may not be held vicariously liable for direct infringement by its subsidiary solely by virtue of the ordinary control that any parent company may exercise over its subsidiary." *In re Google Generative AI Copyright Litig*., 809 F. Supp. 3d at 918.

A court in this Circuit recently rejected a materially more detailed set of vicarious infringement allegations for the same reasons in *In re Google Generative AI Copyright Litigation*. *Id*. at 915-20. In that case, the plaintiffs sought to hold Alphabet vicariously liable for the alleged infringement of its subsidiary, Google. *Id*. The plaintiffs alleged that Alphabet "exercises direct oversight and control over Google's [allegedly infringing] AI business and development activities." *Id.* at 919 (citing Compl. ¶ 104). The plaintiffs also alleged that Alphabet maintained "both the legal right and practical ability to supervise Google's infringing activities" through a shared CEO who "directs both entities' strategic operations," and exercised "direct operational control over Google's AI initiatives," including orchestrating the merger of the two units responsible for building the accused models. *In re Google Generative AI Copyright Litig*., No. 23-cv-03440-EKL, Dkt. No. 91 (Consolidated Class Action Compl.), ¶ 184. The court held all of this insufficient because the "allegations do not establish that Alphabet exercised greater control over Google than any parent company may exercise over its subsidiary." 809 F. Supp. 3d at 918. Plaintiff's allegations against SEC are far thinner than those found wanting in *In re Google*, and fail for the same reason. Although *In re Google* addressed only vicarious copyright infringement, the same logic applies *a fortiori* to vicarious trademark, which imposes an even more demanding standard. *Perfect 10 v. Visa*, 494 F.3d at 806.

The closest Plaintiff's Complaint comes to a factual allegation of control beyond an ordinary parent-subsidiary relationship is its speculation "on information and belief" that unidentified "officers of SEC, Ltd. have instructed SEA, Inc. to continue the sale of the Infringing Products." Compl. ¶¶ 19, 51, 78, 90. *See Rubke v.*

*Capitol Bancorp Ltd.,* 551 F.3d 1156, 1162 (9th Cir. 2009) (a plaintiff may not rely on bare allegations pleaded "[b]ased on information and belief" without indicating "on what facts this belief is formed"). That allegation does not suffice for at least two reasons. First, like the balance of Plaintiff's control allegations, this assertion is pleaded "on information and belief" without any specificity. Plaintiff does not plead any facts identifying the officers, the instruction, or the surrounding circumstances. Plaintiff merely speculates, presumably based on SEC and SEA's parent-subsidiary relationship, that unnamed SEC "officers" told SEA to continue the alleged infringement. Pleading on information and belief is permissible where the facts are peculiarly within the defendant's possession, or where the belief rests on factual content that makes the inference plausible; it does not license a plaintiff to assert a claim with no factual basis. *In re Google Generative AI Copyright Litig*., 809 F. Supp. 3d at 921 n.10 (explaining case law permitting pleading "on information and belief" does "not hold that a claim may be sustained absent any supporting factual allegations"); *Sims v. Opportunity Fin., LLC*, No. 20-CV-04730-PJH, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021) (explaining pleading "on information and belief" may be sufficient where the allegations are plausible based on "the entire factual context" described in the complaint). Here, beyond SEC and SEA's parent-subsidiary relationship, Plaintiff pleads no factual context rendering the Complaint's "on information and belief" speculation about instructions from SEC to SEA plausible.

Second, Plaintiff's speculation that unnamed SEC officers instructed SEA to continue the alleged infringement does nothing to satisfy the higher required showing for a vicarious trademark infringement claim. That cause of action requires that the defendants have an "apparent or actual partnership," "authority to bind one another," or "joint ownership or control over the infringing product." *Perfect 10 v. Visa*, 494 F.3d at 807.

Thus, the Court should dismiss Plaintiff's vicarious liability claims (Counts II and VI) because the only factual allegations in the Complaint establish an ordinary parent-subsidiary relationship, which is insufficient to support vicarious liability.

**C. The Right of Publicity Claims (Counts VII and VIII) Fail to State a Claim Because England Does Not Recognize a Right of Publicity**

The Complaint's right of publicity causes of action fail to state a claim because choice-of-law principles dictate that English law must apply, and England does not recognize a right of publicity.

California has not settled on a single choice-of-law framework for right of publicity claims: some courts treat the right as a form of property, governed by California's default choice-of-law rule for personal property; others apply California's general governmental interest test, the default framework for tort and statutory claims. The Court need not resolve which framework governs, because both independently require the same result.

Under the personal property rule, Cal. Civ. Code § 946, the right of publicity, as "a form of intellectual property," follows the domicile of its owner regardless of where the challenged conduct occurred. *See* Section C.1, *infra*. Under the governmental interest test, a three-step inquiry into whether the relevant laws differ, whether a true conflict exists, and which jurisdiction's interest would be more impaired, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006), the same result follows because California has no interest in applying its law to conduct involving a foreign domiciliary. *See* Section C.2, *infra*. Either doctrine, standing alone, requires dismissal of Counts VII and VIII, which assert the same underlying right and therefore rise or fall together on the choice-of-law inquiry.

Because Defendants contend foreign law governs, Defendants bear the burden of identifying that law, showing it materially differs from California law, and showing it furthers a foreign interest. *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1465 (2007). Defendants meet that burden below.

**1. California's default choice-of-law rule for personal property independently requires application of English law**

Because the right of publicity is "a form of intellectual property," California's default personal property choice-of-law rule governs which jurisdiction's law applies: "personal property is deemed to follow the person of its owner, and is governed by the law of his domicile." Cal. Civ. Code § 946. The Ninth Circuit has applied this rule to hold that a foreign domiciliary's right of publicity claim is governed by the law of her domicile, not California's, because the right is a property right that follows its owner. In *Cairns v. Franklin Mint Co.*, Princess Diana's estate brought right of publicity claims against a U.S. supplier of commemorative memorabilia (e.g., jewelry, plates, and dolls) bearing the late Princess's likeness. 292 F.3d 1139, 1147–48 (9th Cir. 2002). The district court dismissed the case—and the Ninth Circuit affirmed—holding that Princess Diana's estate could not establish a right of publicity claim under California law because Diana was domiciled in England, notwithstanding that the challenged conduct occurred in California. *Id.* Although *Cairns* addressed California's post-mortem right of publicity statute, its reasoning rests on the property character of the right, not on any feature unique to death or descent, and courts have since applied the identical rule to a living person's statutory right of publicity claim under Cal. Civ. Code § 3344. *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599–600 (C.D. Cal. 2015); *accord Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1179 (9th Cir. 2015).

Under this rule, the outcome does not depend on where Defendants distributed or sold the allegedly infringing products, or on any weighing of California's and England's respective interests; it depends only on Plaintiff's domicile. As set forth in Section C.3, *infra*, the Complaint's own allegations establish that Plaintiff is domiciled in the United Kingdom. England does not recognize a right of publicity, whether statutory or at common law. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610–11 (9th Cir. 2010). Accordingly, under § 946 alone, Plaintiff's right of

publicity claims fail, without regard to the governmental interest analysis set forth in Section C.2, *infra*.

**2. California's governmental interest test independently requires application of English law**

California and England's right of publicity laws differ: California recognizes both a statutory and common law right of publicity, and England recognizes neither. *Love*, 611 F.3d at 610–11. That difference does not, however, create a true conflict, which exists only when "both [jurisdictions] have a legitimate but conflicting interest in applying its own law." *Id.* at 610 (internal quotation marks omitted). California has "no interest in applying its law to the conduct in question" where "[n]one of the parties remaining in [the] suit is a citizen of California." *Id*. California's interest in applying its right of publicity law extraterritorially rests on "safeguarding its citizens from the diminution in value of their names and likenesses," and attaches only where the relevant injury is suffered "at the domicile of the celebrity or the location where the image is exploited." *Id.* at 610–11.

California is neither the Plaintiff's domicile, nor the location of Defendants' alleged unauthorized use of her likeness. Plaintiff is not, and does not allege she is, a California citizen or a citizen of the United States, and as discussed in Section C.3, *infra*, the Complaint's factual allegations most plausibly support the conclusion that she is domiciled in the United Kingdom specifically. Nor does the Complaint allege that California is where Defendants' actions were concentrated, as explained in Section C.3, *infra*. Courts have accordingly recognized that California's interest in applying its right of publicity law to a claim by an out-of-state or foreign plaintiff is, "at least, attenuated," because a plaintiff's own domicile has the more direct interest in regulating conduct affecting its residents. *Lightbourne,* 307 F.R.D. at 599–600 (C.D. Cal. 2015); *cf. Page v. Something Weird Video*, 908 F. Supp. 714, 716–17 (C.D. Cal. 1995) (applying California law where the plaintiff was herself a California domiciliary, because "the state of plaintiff's domicile usually has the most significant

relationship to the action"). Because Plaintiff satisfies neither basis on which California has recognized an interest sufficient to create a true conflict, none exists here.

Even if a true conflict existed, the same result would follow. England's non-recognition of the right of publicity is not a legislative void but a deliberate policy choice: unlike Hawaii, which at the time relevant in *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001), had simply never enacted a right of publicity statute, England has affirmatively declined to recognize one, reflecting a "policy choice favoring unrestricted competition in the area of commercial exploitation of names and likenesses." *Love*, 611 F.3d at 611 (quoting *Bi-Rite Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 445 (1st Cir. 1985)). England, accordingly, has a direct and substantial interest in defining the scope of protection, if any, available to its own citizens against exactly this kind of claim, an interest that would be far more impaired by applying California law than California's interest would be by declining to do so. *Cf. id.* ("Even if [plaintiff's] commercial interests in California did create a true conflict, England's interests would be much more greatly impaired by a failure to apply English law.").

**3. The Complaint's own allegations establish that Plaintiff is domiciled in the United Kingdom**

The Complaint alleges that "Dua Lipa is an individual residing outside of the United States." Compl. ¶ 16. While this allegation does not identify a specific country, the Complaint's own factual allegations elsewhere resolve any ambiguity. Paragraph 2 alleges that Plaintiff's 2020 album "was the number one album in the UK," that her 2024 album "debuted at number one on the UK Albums Chart," that she has won "seven Brit Awards," conferred exclusively by the British Phonographic Industry, and that she has been "prominently featured on the cover of" publications including "British GQ." Compl. ¶ 2. These are the specific national and cultural touchstones Plaintiff chose to plead to establish the value of the identity she alleges

Defendants misappropriated. Read together with paragraph 16's allegation of residence outside the United States, the only plausible conclusion the Court can draw from the Complaint's own well-pled allegations is that Plaintiff is domiciled in the United Kingdom.

By contrast, the Complaint alleges no comparable connection between Plaintiff and California. It does not allege that Plaintiff is domiciled in California, resides in California, or conducts business in California. While the Complaint alleges, for jurisdictional purposes, that Defendants distribute and sell the allegedly infringing products "throughout California, including in this judicial district," Compl. ¶ 17, that allegation describes Defendants' general nationwide business operations, not any connection specific to Plaintiff. It does not purport to allege that California was a distinctive or disproportionate market for the allegedly infringing products as opposed to any other state in which Defendants also do business.

**D. The entire Complaint must be dismissed as an impermissible shotgun pleading**

The Court should dismiss the entirety of Plaintiff's Complaint because it fails to provide fair notice of the allegations that apply to each Defendant and that apply to each cause of action. Instead, the Complaint attributes the alleged conduct indiscriminately to multiple defendants and incorporates every preceding allegation and cause of action into each successive count. This "shotgun" pleading style violates the Federal Rules of Civil Procedure, as confirmed by the Ninth Circuit. *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (cataloguing varieties of "shotgun pleading") (citing Fed. R. Civ. P. 8(a)(2), 10(b)-(c)). The Federal Rules require a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as a "demand for the relief sought." Fed. R. Civ. P. 8(a)(2). Rule 10 requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . be stated in a separate count." Fed. R. Civ. P. 10.

Based on these rules, the Ninth Circuit recently catalogued various forms of impermissible shotgun pleading, including two that apply here: (i) a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" and (ii) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Gibson*, 165 F.4th at 1288 (stating that shotgun pleadings not only make it "difficult, if not impossible," for the defendant to respond, but also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts") (citation omitted). Although incorporation by reference is permitted, indiscriminate incorporation violates Rule 8. *Id.* The question is whether the pleading gives the parties and the Court sufficient notice, and "[f]actual allegations, however detailed, must be tied to corresponding causes of action." *Id.* at 1290, 1293. Plaintiff's Complaint falls within both of these categories of shotgun pleading from *Gibson*.

**1. The Complaint fails to specify which defendant allegedly did what**

First, the Complaint impermissibly commingles allegations against multiple defendants without specifying which allegedly did what. Counts I, III, IV, VII, and VIII assert direct liability against "All Defendants" but do not distinguish their conduct. Throughout the Complaint, Plaintiff attributes the allegedly wrongful conduct to "Samsung" or "Defendants" collectively, rather than separately identifying the acts of SEA, SEC, and the unnamed "Doe Defendants" (as to whom the Complaint fails to identify or attribute any particular action). *See, e.g.*, Compl. ¶¶ 5–15, 31–37, 43–48, 62–67, 70–75, 98–104, 107–112. In particular, the core liability allegations in Counts I, III, IV, VII, and VIII assert that "Defendants" committed the relevant acts without identifying which Defendant did what. *Id.* ¶¶ 43, 62, 70, 98, 107.

Those omissions are significant because the Complaint assigns SEA and SEC different roles: SEA is the U.S. sales and marketing subsidiary, while SEC is the

Korean parent allegedly acting through subsidiaries and exercising control over SEA. *Id*. ¶¶ 17–19. Collective allegations may suffice when defendants allegedly engaged in "precisely the same conduct," *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016), but the Complaint's rare entity-specific allegations do not say that SEA and SEC did so here. Its blanket assertion that each Defendant acted in concert and was every other Defendant's agent, affiliate, alter ego, and employee supplies no facts identifying who did what. Compl. ¶ 21.

This case thus closely resembles *Khachatryan v. 1 Hotel West Hollywood LLC*, where the court granted a motion to dismiss because the complaint alleged that three related entities used a photograph in advertising but repeatedly attributed the conduct to "Defendants" without identifying which entity committed each act. No. 2:23-cv-10829-ODW (Ex), 2024 WL 3015504, at *9 (C.D. Cal. June 14, 2024). Similarly, in *Modern Floor Specialists, Inc. v. City of Los Angeles*, the court applied *Gibson* to dismiss a complaint asserting eleven claims against multiple defendants that did not identify which defendant misappropriated trade secrets, participated in the alleged conspiracy, or was subject to each particular claim. No. 2:25-cv-04765-ODW (JPRx), 2026 WL 915292, at *3–4 (C.D. Cal. Apr. 3, 2026). The same notice problem exists here: the Court and Defendants must infer an entity-by-entity theory from allegations directed to a collective term.

For each of these counts, and Count I in particular, this defect is independently fatal to a required element: direct copyright infringement requires "volitional conduct" that "can reasonably be described as the ***direct cause*** of the infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (emphasis added). The Complaint's failure to identify which entity did what leaves that element unpled as to both SEA and SEC. Compl. ¶ 43.

**2. The Complaint indiscriminately incorporates allegations by reference**

Second, Plaintiff's Complaint constitutes impermissible shotgun pleading because each of its eight counts incorporates every preceding paragraph, including every prior cause of action. *See* Compl. ¶¶ 41, 49, 60, 68, 76, 86, 96, 105; *see also Gibson*, 165 F.4th at 1288 (describing one variant of "shotgun pleading" as "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint"). As a result, each successive count contains allegations and legal conclusions irrelevant to the claim asserted, obscuring which allegations are material to it. By Count VIII, for example, Plaintiff has swept in all 104 preceding paragraphs, including unrelated allegations supporting her copyright and trademark theories in Counts I through VI, none of which bear on her right of publicity claim. Compl. ¶ 105. Likewise, Count VII incorporates the previous allegations of vicarious copyright and trademark infringement (Counts II and VI) and contributory trademark infringement (Count V) against SEC, none of which are germane to the right of publicity counts. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (successive incorporation causes later counts to contain "irrelevant factual allegations and legal conclusions"); *Magluta v. Samples*, 256 F.3d 1282, 1284–85 (11th Cir. 2001) (condemning incorporation of preceding counts where allegations material to a particular claim were buried among allegations that could not be material to that claim).

The Court should therefore dismiss the Complaint in its entirety under Rules 8 and 10.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

FISH & RICHARDSON P.C.

Dated: September 10, 2026

*/s/ Thad C. Kodish*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640

Thad C. Kodish *(pro hac vice)*
tkodish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Attorneys for Defendants
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Defendants"), certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

*/s/* Thad C. Kodish
Attorney Name