CHRISTINE LEPERA (*pro hac vice*) ctl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

GABRIELLA N. ISMAJ (SBN 301594) gan@msk.com
ALEXANDRA L. ANFUSO (SBN 333440) ala@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff Dua Lipa

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Dua Lipa,

Plaintiff,

v.

Samsung Electronics America, Inc.; Samsung Electronics Co., Ltd.; and Does 1-10, inclusive,

Defendants.

CASE NO. 2:26-cv-05019-CAS-MAR

**PLAINTIFF DUA LIPA'S OPPOSITION TO MOTION TO DISMISS COMPLAINT**

*[Request for Judicial Notice and Declaration of Gabriella N. Ismaj filed concurrently herewith]*

Date: December 14, 2026
Time: 10:00 a.m.
Judge: Christina A. Snyder
Location: Courtroom 8D

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 8
II. RELEVANT ALLEGATIONS ........ 10
III. LEGAL STANDARD ........ 11
IV. ARGUMENT ........ 12
A. Plaintiff States Viable Claims for False Endorsement ........ 12
1. A Celebrity's Persona Is a Protectable Mark ........ 12
2. The Complaint Plausibly Alleges Likelihood of Confusion ........ 14
B. Plaintiff States Viable Claims for Violation of the Right of Publicity ........ 16
1. Cal. Civ. Code § 946 Does Not Apply ........ 18
2. The Governmental Interest Test Requires Application of California Law ........ 19
C. Plaintiff Adequately Alleges Secondary Infringement Against SEC ........ 23
1. Plaintiff Adequately Alleges Contributory Trademark Infringement ........ 24
2. Plaintiff Adequately Alleges Vicarious Trademark Infringement ........ 24
3. Plaintiff Adequately Alleges Vicarious Copyright Infringement ........ 26
D. The Complaint Is Not An Impermissible "Shotgun Pleading" ........ 27
V. CONCLUSION ........ 29

Mitchell Silberberg & Knupp LLP

# TABLE OF AUTHORITIES

**Page(s)**

## CASES


*Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) ........ 14

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ........ 14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ........ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 11

*Brown v. Elec. Arts, Inc.*, 2009 WL 8763151 (C.D. Cal. Sept. 23, 2009) ........ 16

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ........ 17, 18

*Carr v. U.S.*, 2006 WL 3355098 (E.D. Cal. Nov. 17, 2006) ........ 28

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) ........ 14

*Davis v. Elec. Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015) ........ 18

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ........ 13, 15, 17, 19, 20, 23

*Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553 (N.D. Cal. Mar. 22, 2017) ........ 28

*ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003) ........ 13

*Fenty v. Arcadia Group Brands Ltd.*, 2015 WL 113738 (Ct. App. Jan. 22, 2015) ........ 20


Mitchell Silberberg & Knupp LLP

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D. Nev. 2010) ........ 13, 14

*Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022 (9th Cir. 1983) ........ 19

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ........ 26

*Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026) ........ 27, 28

*Horizon Pers. Servs. v. Hartford Fin. Servs. Grp.*, 2022 WL 2103013 (C.D. Cal. Mar. 23, 2022) ........ 27

*Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974) ........ 20, 21, 23

*In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903 (N.D. Cal. 2025) ........ 25, 26

*Irvine v. Talksport Ltd.*, [2002] EWCA 367 ........ 20

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) ........ 19

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam) ........ 20

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ........ 20, 21

*Khachatryan v. 1 Hotel West Hollywood LLC*, 2024 WL 3015504 (C.D. Cal. June 14, 2024) ........ 28

*Lightbourne v. Printroom Inc.*, 307 F.R.D. 593 (C.D. Cal. 2015) ........ 18, 22

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ........ 11, 29

Mitchell Silberberg & Knupp LLP

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Love v. Associated Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) .......... 19, 20, 22

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) .......... 28

*Marshall v. Ameriprise Financial Servs., LLC*,
2026 WL 910208 (9th Cir. 2026) .......... 22

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 20

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) .......... 21

*Meyer v. City of Clearlake*,
2009 WL 799396 (N.D. Cal. Mar. 24, 2009) .......... 28

*Miller v. Easy Day Studios Pty Ltd.*,
2021 WL 4209205 (S.D. Cal. Sept. 16, 2021) .......... 16

*Modern Floor Specialists, Inc. v. City of Los Angeles*,
2026 WL 915292 (C.D. Cal. Apr. 3, 2026) .......... 28

*Morris v. Burrkhouse*,
2021 WL 4786676 (C.D. Cal. May 21, 2021) .......... 11, 17

*New Name, Inc. v. Walt Disney*,
2008 WL 11338534 (C.D. Cal. Apr. 2, 2008) .......... 17, 24, 25

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
2017 WL 2672113 (N.D. Cal. Jan. 19, 2017) .......... 27

*Page v. Something Weird Video*,
908 F. Supp. 714 (C.D. Cal. 1995) .......... 23

*Pena v. Int'l Med. Devices, Inc.*,
2023 WL 5667538 (C.D. Cal. Jan. 10, 2023) .......... 27

*Pirone v. MacMillan, Inc.*,
894 F.2d 579 (2d Cir. 1990) .......... 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376 (S.D.N.Y. 2016) .......... 18

*Scott and Addison, LLC v. Pinkblush.com*, 2021 WL 3579413 (C.D. Cal. Apr. 5, 2021) .......... 15, 16

*Sims v. Opportunity Fin., LLC*, 2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) .......... 26

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) .......... 23

*Skinner v. Switzer*, 562 U.S. 521 (2011) .......... 20

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109 (9th Cir. 2013) .......... 29

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) .......... 25

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......... 11

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002) .......... 28

*Taira v. Honeywell Int'l, Inc.*, 2019 WL 13252529 (C.D. Cal. Oct. 4, 2019) .......... 27

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) .......... 29

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) .......... 13, 14, 24

*Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997) .......... 13, 15

*White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992) .......... 8, 12

Mitchell Silberberg & Knupp LLP

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

### STATUTES

15 U.S.C.
§ 1125(a) .......... 12

California Civil Code
§ 946 .......... 17, 18
§ 3344.1 .......... 18

### OTHER AUTHORITIES

Mary LaFrance, *Choice of Law and the Right of Publicity: Rethinking the Domicile Rule*, 37 Cardozo Arts & Ent. L.J. 1, 3 (2019) .......... 18

# I. INTRODUCTION[1]

This case is straightforward. Defendants Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively, "Samsung" or "Defendants") used Plaintiff Dua Lipa's ("Plaintiff") likeness on packaging of its televisions without her consent, and sold those televisions to consumers in California and throughout the United States. In seeking to dismiss Plaintiff's Complaint, Samsung does not claim that it had permission to do so (it did not). Instead, it asks the Court to accept a series of fallacious arguments that would leave Plaintiff—and any other internationally recognized celebrity—with no remedy for the unauthorized commercial exploitation of her identity on American shelves simply because she is domiciled outside of the United States. None of these arguments excuse Samsung's theft.

*First*, Samsung argues that Plaintiff cannot state a claim for false endorsement under Lanham Act § 43(a). The Ninth Circuit has long held that a celebrity's persona functions as a mark, and that unauthorized use indicating the celebrity's sponsorship is actionable. Samsung knows this firsthand. In *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992), the Ninth Circuit allowed a false endorsement claim to proceed against Samsung for evoking a celebrity's identity without their consent. Samsung did far more here: it used an *actual* photograph of Plaintiff. Samsung's position that Plaintiff cannot establish consumer confusion is equally untenable: the Complaint alleges actual consumer confusion in social media posts. Those allegations are strong evidence of likelihood of confusion, and at a minimum, make the issue a question of fact that cannot be resolved on the pleadings.

*Second*, Samsung argues that California's right of publicity protections do not apply because Plaintiff is purportedly domiciled in England (she is not), which

[1] Unless noted, all emphasis is added and all citations and quotation marks are omitted.

Samsung incorrectly claims does not recognize a comparable right. Not only does this argument assume false facts that are not pled, but under that theory, any company could appropriate the identity of a foreign celebrity to sell products in California without permission, so long as the celebrity's country of residence does not have a publicity statute. That is not the law. Even accepting Samsung's mistaken assumption that English law is implicated, California's governmental-interest analysis confirms that California's interest is predominant. First, there is no material conflict, because English courts have long recognized that the tort of passing off protects celebrities against false endorsement. Regardless, California has a paramount interest in regulating commercial misappropriation that occurs within California's borders and targets California consumers; England does not.

*Third*, Samsung claims that Plaintiff has not pled SEC's control over the conduct at issue sufficient to state vicarious copyright[2] and trademark infringement claims. This argument fails. The Complaint alleges that SEC manufactures the televisions at issue, sells them through its website, participates in their creation, approval, licensing, and distribution, and directed SEA to continue to sell them even after Plaintiff demanded that Samsung stop. Judicially noticeable documents also demonstrate that ***SEC owns the U.S. trademark rights for the very "SAMSUNG" mark printed on the infringing boxes***. SEC obviously controls its own mark, and chose to exploit it along with the unauthorized image of Plaintiff. SEC cannot bury its head in the sand while simultaneously branding the infringing packaging with its own mark for sale in the United States.

*Finally*, Samsung's "shotgun pleading" argument is baseless. The Complaint names only two related defendants, both engaged in the infringing

[2] Samsung does not challenge Plaintiff's first cause of action for direct copyright infringement other than by its baseless "shotgun pleading" argument, discussed below.

conduct, and Samsung's Motion confirms that it clearly understands the allegations asserted against both Defendants. The Motion should be denied.

## II. RELEVANT ALLEGATIONS

Plaintiff is a Grammy-winning artist, model, and one of the most recognized performers and brands in the world. Compl. ¶ 2. Plaintiff is domiciled outside of the United States, has toured extensively across the globe, and has been featured on the cover of many popular magazines including *Vogue, Elle*, and *Rolling Stone*. *Id.* ¶¶ 2, 16. Plaintiff has built substantial commercial value in her image, and licenses that value selectively, through paid partnerships with luxury brands such as Versace, Yves Saint Laurent, Porsche, and Apple. *Id*. ¶¶ 3-4, 38-39.

Defendants are companies within the global behemoth "Samsung." SEC manufactures televisions, including those at issue (the "Infringing Products"), and sells them through www.samsung.com. Compl. ¶¶ 5, 18, 26(a). SEC directly participates in the creation, approval, licensing, and distribution of televisions within the United States. *Id*. ¶ 19. SEA is SEC's U.S. sales and marketing subsidiary. *Id*. ¶ 17.

Plaintiff owns the copyright in a photograph titled "Dua Lipa – Backstage at Austin City Limits, 2024" (the "DL Image"), registered as VA 2-479-685. Compl. ¶¶ 7, 28–29. Without authorization, capitalizing on Plaintiff's fame and goodwill, Samsung featured the DL Image on boxes for the Infringing Products. *Id*. ¶¶ 6, 31. Plaintiff's face is the largest and most prominent image on the box. *Id*. ¶ 6. Samsung had no permission for this use, yet Samsung manufactured, distributed, and sold a vast number of the Infringing Products across California and the United States, including at Best Buy and Target, and through Samsung's own storefronts and website. *Id*. ¶¶ 8, 13, 25, 32.

Samsung benefitted considerably from Plaintiff's fame and goodwill. Plaintiff's fans posted photographs of the box on social media, writing "I wasn't

even planning on buying a tv but I saw the box so I decided to get it" (Compl. ¶ 34) and they would buy the television "just because Dua is on it" (*id.* ¶ 35).

In or around June 2025, Plaintiff discovered Samsung's conduct and immediately demanded that Samsung cease and desist from using the DL Image. Compl. ¶ 36. Samsung refused. *Id.* ¶¶ 10, 37. On information and belief, SEC's officers participated materially in that decision and instructed SEA to continue sales. *Id.* ¶¶ 19, 51, 90.

Samsung's infringing conduct has deprived Plaintiff of the ability to control and monetize her image, diluting the value of her brand and interfering with her legitimate brand deals and sponsorships. Compl. ¶ 12. Left with no alternative, Plaintiff filed this action on May 8, 2026.

## III. LEGAL STANDARD

To defeat a Rule 12(b)(6) motion, the complaint need only provide enough factual detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's allegations must be taken as true, with all reasonable inferences drawn in the plaintiff's favor. *Morris v. Burrkhouse*, 2021 WL 4786676, at *1 (C.D. Cal. May 21, 2021). When there are two plausible explanations, the plaintiff's survives unless the defendant's alternative is so convincing that the plaintiff's is implausible. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Dismissal is proper only where a complaint fails to plead either a cognizable legal theory or sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. ARGUMENT

### A. Plaintiff States Viable Claims for False Endorsement

Samsung argues that Plaintiff's third and fourth causes of action for false endorsement under the Lanham Act and state law fail because Plaintiff cannot hold a trademark in her image, and because the Complaint does not plausibly allege consumer confusion. Mot. at 3-10. Samsung is wrong.

#### 1. A Celebrity's Persona Is a Protectable Mark

Samsung's Motion attacks theories and causes of action that have not been pled. Its principal contention—that Plaintiff cannot hold a trademark in all images of herself—is irrelevant to the claims Plaintiff actually asserts and is incompatible with the well-established doctrine of false endorsement. Samsung ignores the Complaint's factual allegations and the statute it invokes, which plainly assert a claim for ***false endorsement*** under the Lanham Act and its state law equivalent. Compl. at 17 (false endorsement under Lanham Act § 43(a), 15 U.S.C. § 1125(a)); ¶ 62 ("[U]nauthorized use … constitutes ***false endorsement*** … "); ¶ 63 ("[B]elieved … Plaintiff ***endorses, approves, recommends,*** … the Infringing Products"); ¶ 71 ("[C]onfusion, mistake, or deception as to Plaintiff's ***sponsorship*** … ").

As Samsung well knows, the Ninth Circuit has long recognized that celebrities hold a trademark-like interest in their likeness for purposes of a Lanham Act § 43(a) claim. Indeed, in *White v. Samsung Electronics America, Inc.*, SEA "attempted to capitalize on [Vanna] White's fame to enhance their fortunes" in an advertisement that depicted White as a robot. 971 F.2d at 1396. The Ninth Circuit made clear that "[i]n cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona" and held that a jury could find the advertisement falsely suggested her endorsement. *Id*. at 1400.

The same reasoning applies here with greater force, because Samsung used Plaintiff's actual photograph. Plaintiff has built one of the most recognizable and

valuable personal brands in the world. Compl. ¶ 2. It is well-established that celebrities, particularly those of Plaintiff's stature, hold rights in their likeness equivalent to a trademark. *See, e.g.*, *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001) (analyzing § 43(a) claim: "term 'mark' applies to the celebrity's persona"); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812, n.1 (9th Cir. 1997) ("In a case involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona"); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-11 (9th Cir. 1992) (recognizing "false endorsement claims brought by … celebrities, for the unauthorized imitation of their distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'").

Samsung's authorities are not just inapposite, they actually ***support*** Plaintiff, recognizing that a celebrity's likeness or persona can constitute a "mark" in a false endorsement claim. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003) ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product."); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) ("pictures of Ruth are in a sense symbols" protected by Section 43(a)); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148, 1166-67 (D. Nev. 2010) (similar).[3]

Moreover, in *Fifty-Six Hope Road*, the Ninth Circuit affirmed a jury verdict for the plaintiffs on their § 43(a) claim and rejected the very argument Samsung asserts:

[3] Samsung's quoted language addressed a different question: whether the plaintiffs' registered marks in their names extended to images of them. *Fifty-Six Hope Road*, 688 F. Supp. 2d at 1158 ("Plaintiffs' registered mark consists of the words BOB MARLEY. Plaintiffs also contend, however, that their mark consists of any visual depiction of Marley."); *Pirone*, 894 F.2d at 582 ("Although its registration is limited to the words 'Babe Ruth,' Pirone would have us read her rights in that word mark to include every photograph of Ruth ever taken."). Plaintiff makes no such claim here.

Mitchell Silberberg & Knupp LLP

> Defendants claim that the § 1125(a) claim fails as a matter of law, because a celebrity's "persona" is too "amorphous" to constitute a "name, symbol, or device" under § 1125(a). This premise is incorrect. Our jurisprudence recognizes a § 1125(a) claim for misuse of a celebrity's persona. "[A] celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false endorsement under section 43(a) of the Lanham Act."

778 F.3d at 1067–68.

Samsung acknowledges that celebrities have a "trademark-like interest" in their identity sufficient to support a false endorsement claim. Mot. at 6, n.1. That is precisely the claim here.[4] Samsung's attempt to create confusion where there is none should be rejected.

### 2. The Complaint Plausibly Alleges Likelihood of Confusion

Apparently recognizing that the Complaint *does* plead false endorsement, Samsung argues that, as a matter of law, consumers are not likely to be confused by the inclusion of the DL Image on the Infringing Products. Mot. at 7-10. Samsung again is wrong.

Initially, likelihood of confusion is a fact-intensive inquiry not appropriate on a motion to dismiss. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 413

---

[4] Samsung appears focused on the "trademark infringement" label on Plaintiff's third and fourth causes of action. But a "false endorsement claim based on the unauthorized use of a celebrity's identity … alleges the misuse of a trademark." *Waits*, 978 F.2d at 1110. That label does not automatically convert Plaintiff's false endorsement claim into a separate (or additional) claim. Factual allegations govern over titles. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). The Complaint is clear that the third cause of action asserts a false endorsement claim under Lanham Act § 43(a) and the fourth cause of action states a parallel claim under California common law, which the Ninth Circuit treats as substantially congruent with Section 43(a). *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994).

Mitchell Silberberg & Knupp LLP

(9th Cir. 1996); *Wendt*, 125 F.3d at 812-14. Ignoring this reality, and the allegations of the Complaint, Samsung nonetheless contends that the box does not *look* like an endorsement because Plaintiff's face appears within a depiction of the television's on-screen interface, alongside other content. Mot. at 8-9. Samsung's *ipse dixit* is nonsensical. Plaintiff's face is the dominant element on the box, and nothing identifies her as channel content.

Samsung also does not engage with ***any*** of the likelihood of confusion factors, instead drawing its own inferences untethered from the law. In celebrity cases, those factors are: (1) plaintiff's level of recognition; (2) relatedness of plaintiff's fame to the defendant's product; (3) similarity of the likeness used to the plaintiff; (4) actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent; and (8) likelihood of expansion of product lines. *Downing*, 265 F.3d at 1007–08. If any fact analysis were to be conducted at this stage, and it should not be, the factors more than plausibly support an inference of confusion:

- **Recognition.** Plaintiff is one of the most recognized performers in the world, and is an enormously successful musical artist, model, and brand ambassador for numerous luxury brands. Compl. ¶¶ 2-4.
- **Relatedness of her fame to the product.** Plaintiff has been a brand partner for major companies, including Apple—Samsung's direct competitor. Compl. ¶ 4. Consumers are thus accustomed to seeing Plaintiff lend her image to consumer technology.
- **Similarity.** Samsung used an actual photograph of Plaintiff, not an imitation or evocation. Compl. ¶¶ 6, 28.
- **Confusion.** Evidence of actual confusion is not required at any stage, let alone on the pleadings. *Scott and Addison, LLC v. Pinkblush.com*, 2021 WL 3579413, at *2 (C.D. Cal. Apr. 5, 2021). Nonetheless, the Complaint alleges specific consumers tied their purchasing decisions

Mitchell Silberberg & Knupp LLP

to the DL Image. Compl. ¶¶ 34–35 (one did not plan to buy a television until they "saw the box," and another would buy it "just because Dua is on it").[5] This is "above and beyond what is required" on the pleadings. *Scott and Addison*, 2021 WL 3579413, at *2.

- **Intent.** Samsung continued to use the DL Image long after Plaintiff demanded that it stop, supporting an inference of willfulness and bad faith. Compl. ¶¶ 10, 36–37.

Plaintiff's image was valuable to Samsung precisely because consumers (and Samsung) understand what a celebrity's face on a product means. Plaintiff does not lend her name and likeness casually; she licenses them selectively, and for significant compensation, through partnerships with high-end, luxury brands. Consumers accustomed to seeing Plaintiff in paid brand partnerships reasonably concluded, as the Complaint alleges, that her appearance on Samsung's packaging was another one. Samsung cannot credibly argue otherwise.[6]

### B. <u>Plaintiff States Viable Claims for Violation of the Right of Publicity</u>

Samsung's entire argument seeking dismissal of Plaintiff's right of publicity claims is premised on a false fact not alleged in the Complaint: that Plaintiff is domiciled in England. She is not. Compl. ¶ 16 (alleging only that Plaintiff "resid[es] ***outside of the United States***"). Nonetheless, Samsung asks the Court to

---

[5] Samsung's attempt to dismiss these comments as "hyperbole" is unavailing. Whether these comments are "anecdotal," "informal," or "support any broader inference about how consumers generally understood the DL Image's inclusion within the interface" is a question for discovery. *Scott and Addison*, 2021 WL 3579413, at *2. At this stage, drawing all reasonable inferences in Plaintiff's favor, these comments support a plausible inference of consumer confusion. *Id.*

[6] Samsung's authorities do not support dismissal. In *Brown v. Elec. Arts, Inc.*, 2009 WL 8763151 (C.D. Cal. Sept. 23, 2009) and *Miller v. Easy Day Studios Pty Ltd.*, 2021 WL 4209205 (S.D. Cal. Sept. 16, 2021), the video game characters based on the plaintiffs' likenesses appeared in expressive works protected by the First Amendment and were not obvious uses of the plaintiffs' likenesses; the courts described them as "generic" and "anonymous." *Miller*, 2021 WL 4209205, at *3, *7-8; *Brown*, 2009 WL 8763151, at *5.

infer Plaintiff's domicile from how her albums performed on English charts. Mot. at 19-20. But chart performance does not determine domicile. Otherwise, the same allegations would place Plaintiff's domicile in the United States. Compl. ¶ 2. On a motion to dismiss, the Court cannot supply facts the Complaint does not plead, much less draw inferences against Plaintiff. *See Morris*, 2021 WL 4786676, at *1; *New Name, Inc. v. Walt Disney*, 2008 WL 11338534, at *2 (C.D. Cal. Apr. 2, 2008). Samsung's incorrect contention that English law is implicated at all should be rejected outright.

Having unilaterally determined that English law controls (it does not), Samsung then argues that it gives Plaintiff no remedy (also incorrect). By this contention, Samsung takes the position that it can appropriate ***any*** English celebrity's likeness to sell its products in California and across the country, without consequence. Samsung's argument fails at every step.

First, Samsung argues that California Civil Code § 946 requires the application of the law of Plaintiff's domicile to her right of publicity claim. But Section 946 governs personal property, amd courts apply it to the ***post-mortem*** right of publicity, not the right of publicity in a living person, because the post-mortem right is a descendible property interest. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1146 (9th Cir. 2002). A ***living person's*** right of publicity, by contrast, is a personal tort, and choice of law is governed by California's governmental interest test. *Downing*, 265 F.3d at 1006. Second, even if English law were implicated (it is not), there is no true conflict to resolve because England affords a substantially congruent remedy through the tort of passing off, and the Court need not entertain a choice of law analysis at all. But even if a conflict existed, Samsung has not carried, and cannot carry, its burden to demonstrate that California's interest in regulating commercial exploitation occurring within its borders is secondary to England's.

### 1. Cal. Civ. Code § 946 Does Not Apply

Samsung incorrectly argues that the right of publicity is "a form of intellectual property" governed by the law of the owner's domicile under California Civil Code § 946. Mot. at 17–18. But Samsung conflates two distinct rights: the ***post-mortem*** right of publicity (property right) and a ***living person's*** right of publicity (tort).

A living person's right of publicity protects her control over the commercial use of her own identity. It is personal to her, and she enforces it through an action in tort under Civil Code § 3344 and the common law. Civil Code § 3344.1, on the other hand, created a separate, ***post-mortem*** right of publicity, which the Legislature expressly defined as "***property rights***." Civ. Code § 3344.1(b). Civil Code § 3344, applicable here, contains no comparable language. Mary LaFrance, *Choice of Law and the Right of Publicity: Rethinking the Domicile Rule*, 37 Cardozo Arts & Ent. L.J. 1, 3 (2019) (courts applying domicile rule confuse disputes over ownership of a right with disputes over liability for tortious injury to it).

That distinction is dispositive. Courts apply § 946 to the post-mortem right precisely because the Legislature made it property. *Cairns*, 292 F.3d at 1147–48. Plaintiff is alive, and her claim is thus a personal tort, not a claim to property. Section 946 thus has no application and the governmental interest test applies.[7]

---

[7] Samsung's cases "do not support the proposition that the law of the plaintiff's domicile automatically applies." *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 386 (S.D.N.Y. 2016) (declining to extend *Cairns* and *Lightbourne* to § 3344 claims, instead applying governmental interest test). Indeed, *Cairns* analyzed application of California's post-mortem right of publicity statute to § 946, and an earlier decision explicitly noted that the application "has no bearing on choice of law questions presented under § 3344." *Cairns*, 24 F. Supp. 2d at 1028, n.11. Nor does the characterization of the publicity right as "intellectual property" or the reliance on § 946 preclude application of California law. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1178–79 (9th Cir. 2015); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D. Cal. 2015). *Lightbourne* invoked § 946 only to find that the plaintiffs' home states "ha[d] an interest" in applying their law, and then weighed comparative impairment. *Id.* at 599–600. If anything, treating the right of publicity as intellectual property cuts *against* Samsung. Ownership of intellectual

(…continued)

Mitchell Silberberg & Knupp LLP

**2. The Governmental Interest Test Requires Application of California Law**

For tort claims, including the right of publicity under common law and Section 3344, California applies the governmental interest test. *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir. 1983) ("Libel and invasion of privacy are transitory torts to which the law of the forum will normally be applied absent a strong governmental interest of another jurisdiction."); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609–11 (9th Cir. 2010) (cited by Samsung); *Downing*, 265 F.3d at 1005.

The governmental interest analysis contains three steps: (1) "the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction," (2) "if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied," and (3) "if more than one jurisdiction has a legitimate interest ... the court [must] identify and apply the law of the state whose interest would be more impaired if its law were not applied." *Downing*, 265 F.3d at 1005. Samsung concedes that it bears the burden of establishing that foreign law should displace California law. Mot. at 16 (citing *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1465 (2007)). Samsung has failed to do so.

**a. Even Assuming English Law Is Implicated, Its Passing Off Law Is Substantially Equivalent to California's Right of Publicity Law**

First, Samsung must establish that the law of the potentially affected jurisdiction differs from California law "with regard to the particular issue in

---

property may be determined by the law of the owner's domicile, but infringement is governed by the law where the infringement occurred. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90–91 (2d Cir. 1998).

question." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006); *Downing*, 265 F.3d at 1005. The difference must be **material**, meaning it must make a difference in this litigation. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Where the laws do not materially differ, there is no conflict, and the law of the forum applies. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 (1974).

Even if English law were implicated, and it is not, it does not materially differ from California law. English courts have long held that a celebrity may recover in the tort of "passing off" when a company uses her image in a manner that falsely conveys her endorsement. *Irvine v. Talksport Ltd.*, [2002] EWCA 367 (Ch.) (radio station liable for using photograph of Formula One driver in promotional material without consent); *Fenty v. Arcadia Group Brands Ltd.*, 2015 WL 113738 (Ct. App. Jan. 22, 2015) (Topshop liable for selling T-shirts bearing photograph of Rihanna).[8]

Under the facts alleged, the English tort of "passing off" is congruent with Samsung's violation of Plaintiff's right of publicity under California law. The Complaint pleads that Plaintiff has substantial reputation and goodwill, which she monetizes through endorsement partnerships with luxury brands, and that Samsung used Plaintiff's image without authorization, falsely implying that she endorsed the Infringing Products. Compl. ¶¶ 2–4, 6, 8, 14, 31, 38–39, 98, 107.

Thus, even accepting Samsung's mistaken assumption that English law is implicated, the analysis ends at the first step. Because English and California law impose liability for the same alleged conduct, there is no material conflict, and California law governs. *Hurtado*, 11 Cal. 3d at 580.[9]

---

[8] *Love* addressed whether English law recognizes a freestanding publicity right. 611 F.3d at 610-11. It did not hold that English law leaves a celebrity without a remedy when her image is used to suggest a false endorsement on a retail product.

[9] A complaint need not "pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *Johnson v. City of Shelby*, 574 U.S.

(…continued)

**b. California Has the Predominant Interest Here**

Even if English law were implicated, and even if it conflicted with California law, California law would still govern, because California's interests are predominant and would be significantly impaired if its law were not applied, while England's would not. The jurisdiction where the conduct occurred ordinarily has the predominant interest (*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010)) and companies that choose to do business in California are expected to comply with California law in conducting that business (*Kearney*, 39 Cal. 4th at 126–28). The Complaint alleges that Samsung exploited Plaintiff's likeness in California using a photo taken in Austin, Texas: Samsung distributes the Infringing Products to retailers, including in Los Angeles (Compl. ¶ 25(f)), SEA operates its own retail storefronts in California, including in Glendale (*id.* ¶ 25(c)), and Samsung sells the Infringing Products to California residents (*id.* ¶¶ 8, 13, 25(h), 26(d)-(e), 99, 108). California also has a particular interest in protecting the personas of those who build careers in its entertainment industries. If those individuals cannot rely on California law within California, those core industries suffer.

England, by contrast, has nothing at stake. Neither Defendant is English: SEC is a Korean company and SEA is a New York corporation. No English conduct or market is involved. A foreign jurisdiction has no interest in shielding out-of-country companies from liability for conduct in California, and no cognizable interest in denying its own (alleged) resident a remedy for that conduct. Because California has an interest in having its law applied and England does not, there is no true conflict, and California law applies. *Hurtado*, 11 Cal. 3d at 580.

Even if there were a true conflict, California's interests would be significantly more impaired if its law were not applied. Applying foreign law

---

10, 11–12 (2014) (per curiam). Rule 12(b)(6) tests whether the facts alleged entitle the plaintiff to relief, not the label on the count.

Mitchell Silberberg & Knupp LLP

would leave California unable to regulate goods marketed and sold within its borders. Any company could exploit a foreign celebrity's image in California stores, mislead California consumers, and keep the profits without liability. Applying California law, by contrast, would cost England nothing. California law therefore governs. *See, e.g., Marshall v. Ameriprise Financial Servs., LLC*, 2026 WL 910208, at *1 (9th Cir. 2026) (applying California law given "more numerous and relevant contacts between this dispute and California, as well as California's interests in regulating financial brokers within its borders and protecting California consumers").

*Love v. Associated Newspapers, Ltd*, only underscores why California law applies. In *Love*, the Ninth Circuit applied English law because the challenged exploitation occurred in England, through an English newspaper's distribution to English readers. 611 F.3d at 610-11. On those facts, the court correctly concluded that England's interests were strong. Here, every relevant fact points in the opposite direction. The exploitation occurred in the United States, including in California. Samsung is not English. The deceived consumers are American, and Californian. Applying *Love* demonstrates California law applies.[10]

The same is true of *Lightbourne v. Printroom Inc.*, which denied certification of a nationwide class of more than a ***million*** student-athletes, applying a class-specific burden that required a showing of California's contacts "to the claims of each class member." 307 F.R.D. at 597–98. Here, by contrast, Samsung, as the proponent of foreign law, must show that another jurisdiction's interest would be more impaired than California's. Mot. at 16. *Lightbourne*'s observation that a plaintiff's domicile is "normally" the place of greatest injury (*id*. at 600), shows only that the domicile has *an* interest, not an exclusive one. Indeed, that

[10] California need not be a "distinctive or disproportionate market" for the Infringing Products to establish a strong interest. Mot. at 20. No authority imposes that, and Samsung cites none. *Love* asks where the image was exploited, not where it was exploited most. 611 F.3d at 610–11.

court's own authority locates the injury where the plaintiff's name carries commercial value and is exploited, which in this case is California. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988).[11]

Samsung attempts to distinguish *Downing v. Abercrombie & Fitch*, which applied California's right of publicity law to a Hawaiian plaintiff, on the ground that Hawaii simply never enacted a right of publicity statute, whereas Samsung claims England affirmatively declined to recognize one. Mot. at 19. This purported distinction fails because English law is not implicated and it ignores the analogous English law of "passing off" discussed above. And, under the governmental interest test, a jurisdiction's law, even a deliberate policy choice, gives rise to an interest only where applying it would advance the purpose it serves. *See Hurtado*, 11 Cal. 3d at 581 (Mexico had no interest in applying limitation on wrongful death damages because policy existed to protect Mexican defendants, and defendants were not Mexican). England's policies govern competition *in England's market.* They are not implicated by foreign companies using Plaintiff's likeness on products in California.

Accordingly, Samsung's argument about the relevance of England fails at every turn, most conclusively because the governmental interest test confirms that there is no true conflict and that California law applies.

### C. <u>Plaintiff Adequately Alleges Secondary Infringement Against SEC</u>

Samsung argues that Plaintiff's claims against SEC for vicarious copyright infringement, contributory trademark infringement and vicarious trademark infringement should be dismissed. Mot. at 6, 11. SEC does not challenge the Complaint's allegations that SEC was directly involved in the distribution of the

[11] *Page v. Something Weird Video*, 908 F. Supp. 714, 717 (C.D. Cal. 1995) is also inapplicable, given that "none of the parties … had any connections to New York" during the relevant time period.

Infringing Products. Although SEC's direct participation is sufficient to maintain it as a party here, Plaintiff has also plausibly alleged secondary infringement in the alternative.

**1. Plaintiff Adequately Alleges Contributory Trademark Infringement**

Samsung argues that Plaintiff's fifth cause of action for contributory trademark infringement should be dismissed because Plaintiff fails to allege direct infringement. Mot. at 6. But, as established above, Plaintiff has plausibly alleged a claim for false endorsement under § 43(a) of the Lanham Act and the substantially congruent state law claim—both of which are trademark claims. *Waits*, 978 F.2d at 1110 ("false endorsement claim based on the unauthorized use of a celebrity's identity … alleges the misuse of a trademark.").

**2. Plaintiff Adequately Alleges Vicarious Trademark Infringement**

Samsung incorrectly argues that Plaintiff's sixth cause of action for vicarious trademark infringement fails to state a claim because it does not adequately allege SEC's control over SEA's infringement. Mot. at 11-15. Vicarious trademark liability requires "an apparent or actual partnership," "authority to bind one another," or "joint ownership or control over the infringing product." *New Name*, 2008 WL 11338534, at *3. Plaintiff adequately alleges both. Nonetheless, Samsung understates Plaintiff's allegations of control, asserting that Plaintiff relies solely on SEC's status as SEA's corporate parent. Mot. at 11. But in addition to the parent-subsidiary relationship, the Complaint alleges SEC's joint ownership and control over the specific infringing conduct numerous times, including that SEC:

- Manufactured the Infringing Products (Compl. ¶¶ 5, 18);
- Operates and controls www.samsung.com, through which it sold the Infringing Products (*id*. ¶¶ 18, 26);

- Participated in the creation, approval, licensing, and distribution of the Infringing Products (*id.* ¶ 19); and
- Instructed SEA to continue selling the Infringing Products after Plaintiff demanded it cease (*id.* ¶¶ 19, 51, 90).

These allegations are more than sufficient. *See, e.g.*, *New Name*, 2008 WL 11338534, at *3 (allegations that defendants "transported, displayed and offered for sale" infringing products in the United States and foreign sales were "controlled and authorized in the United States" sufficient).[12]

SEC also owns the "SAMSUNG" trademark depicted on the Infringing Products. RJN, Exs. 1-2. A trademark owner has the right and ability—and indeed the obligation—to control the use of its marks in commerce. It is therefore implausible that SEA placed SEC's mark on the Infringing Products without SEC's authorization. The reasonable inference, which must be drawn in Plaintiff's favor at this stage, is that SEC permitted its mark to be used on the Infringing Products and retained the right to control the same. With its mark on the product, SEC had the power to stop the Infringing Products from being sold, but chose not to exercise that power and control.

That certain of Plaintiff's allegations are pleaded "on information and belief" changes nothing. Pleading on information and belief is permitted where the facts are peculiarly within the defendant's possession and control, or where the belief rests on facts that make the inference of culpability plausible. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Both are met here. The facts concerning SEC's and SEA's division of responsibility for designing, approving, manufacturing, and distributing the Infringing Products; SEC's role in deciding to use Plaintiff's likeness; and their communications after receiving and refusing to

---

[12] *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 918 (N.D. Cal. 2025) is not applicable. Unlike here, the plaintiffs "allege[d] nothing more than a typical parent-subsidiary relationship" (*id.* at 915) and "[did] not allege *any* facts regarding Alphabet's involvement" (*id.* at 917).

comply with Plaintiff's cease and desist demand are uniquely within Samsung's knowledge. Moreover, the allegations are not speculative. SEC's ownership of the SAMSUNG trademark depicted on the box indicates its control over SEA's distribution of televisions contained therein. RJN, Exs. 1-2. That SEC's officers exercised control over the decision to sell, and continue selling, the Infringing Products is the natural inference of these facts.[13]

**3. Plaintiff Adequately Alleges Vicarious Copyright Infringement**

Aside from its "shotgun pleading" argument, Samsung does not challenge the substance of Plaintiff's direct copyright infringement claim against either SEC or SEA, essentially conceding the Complaint sufficiently alleges both entities' direct involvement. Samsung argues only that Plaintiff fails to plead vicarious copyright infringement against SEC in the alternative. Mot. at 11-15. Samsung is wrong.

A defendant is vicariously liable for copyright infringement if it has the right and ability to supervise the infringing conduct and a direct financial interest in it. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-64 (9th Cir. 1996). For many of the same reasons as explained above, the Complaint plausibly alleges SEC's vicarious copyright liability. The Complaint alleges that SEC operates and controls the www.samsung.com website through which the Infringing Products are sold (Compl. ¶¶ 18, 26), and participates in the creation, approval, licensing, and distribution of the Infringing Products (*id.* ¶ 19). Moreover, SEC's ownership of the SAMSUNG trademark depicted on the boxes confirms that SEC had the right

[13] Samsung misrepresents *In re Google Generative AI Copyright Litig.*, which acknowledged that "a plaintiff may plead facts 'on information and belief,'" but "Plaintiff [did] not allege infringement … on information and belief." 809 F. Supp. 3d at 921 n.10. Unlike here, in *Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021), the allegations were conclusory or other allegations "undermine[d] [their] plausibility."

and ability to control the distribution of the Infringing Products, and profited from their sale. RJN, Exs. 1-2.

These allegations are sufficient to state a claim for vicarious copyright infringement. *See, e.g., Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 2672113, at *2 (N.D. Cal. Jan. 19, 2017) (allegation that defendant had "legal right to stop or limit the directly infringing conduct" and "practical ability to do so" sufficient).

**D. <u>The Complaint Is Not An Impermissible "Shotgun Pleading"</u>**

Samsung mischaracterizes the Complaint as a "shotgun pleading" because it refers to SEA and SEC collectively as "Samsung" and incorporates by reference the allegations of previous counts in each cause of action. Mot. at 20-23. These purported defects fall far short of a "shotgun pleading," which is one "that overwhelm[s] defendants with an unclear mass of allegations." *Horizon Pers. Servs. v. Hartford Fin. Servs. Grp.*, 2022 WL 2103013, at *3 (C.D. Cal. Mar. 23, 2022). Such pleadings are disapproved only if they "fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis." *Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026). Here, Plaintiff plainly alleges that ***each*** Defendant engaged in the misconduct alleged, and adequately puts each Defendant on notice of the allegations against it. Indeed, Samsung's own Motion addresses each count, identifies the allegations specific to each Defendant, and cites the paragraphs on which each claim rests. Samsung plainly understands what it is accused of.

Further, the Complaint makes clear that both Defendants were involved in the creation and distribution of the television boxes at issue. Compl. ¶¶ 5, 8, 13-15, 18-19, 25-26. Under such circumstances, each Defendant has proper notice of the claims against it. *See Taira v. Honeywell Int'l, Inc.*, 2019 WL 13252529, at *3 (C.D. Cal. Oct. 4, 2019) (grouping proper where "*all* of them made *all* the misrepresentations"); *Pena v. Int'l Med. Devices, Inc.*, 2023 WL 5667538, at *2

Mitchell Silberberg & Knupp LLP

(C.D. Cal. Jan. 10, 2023) (no "shotgun pleading" where "allege[d] each Defendants' role in the alleged wrongdoing").

Additionally, "[w]hen framing a count, plaintiffs may incorporate by reference the allegations of previous counts, so long as the claims are identified with sufficient clarity to enable defendants to frame a responsible pleading." *Meyer v. City of Clearlake*, 2009 WL 799396, at *4 (N.D. Cal. Mar. 24, 2009). Here, Plaintiff clearly sets forth Samsung's relevant conduct and the connection between that conduct and each cause of action. Samsung does not demonstrate "how incorporating the preceding paragraphs prevents them from framing a responsible answer." *Carr v. U.S.*, 2006 WL 3355098, at *5 (E.D. Cal. Nov. 17, 2006); *Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017) ("[C]omplaint does not employ impermissible shotgun pleading just because it re-alleges by reference all of the factual paragraphs preceding the claims").

Samsung's authorities are not analogous. Each involved a true "kitchen sink" approach, in which the plaintiffs asserted vague and confusing allegations or lumped together *numerous* defendants with vastly different roles, such that the defendants could not determine which allegations related to each of them. *See Gibson*, 165 F.4th at 1291-92 (three entities, four prosecutors, and one police detective engaged in conspiracy and bundled violations of First, Fifth, and Fourteenth Amendments into one claim); *Modern Floor Specialists, Inc. v. City of Los Angeles*, 2026 WL 915292, at *3 (C.D. Cal. Apr. 3, 2026) (eleven causes of action against nine defendants, with multiple claims rolled into single causes of action); *Khachatryan v. 1 Hotel West Hollywood LLC*, 2024 WL 3015504, at *9 (C.D. Cal. June 14, 2024) (defendants not mentioned in substantive allegations).[14]

---

[14] The same is true of Samsung's out-of-circuit authorities. *Magluta v. Samples*, 256 F.3d 1282, 1284–85 (11th Cir. 2001) (fourteen defendants with vastly different roles with no distinction); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (no dismissal for "shotgun pleading"; affirmed on merits).

Those cases bear no resemblance to this one. Plaintiff has named only two Defendants, both members of the same corporate family, and alleges that each was responsible for manufacturing, distributing, marketing and selling the Infringing Products. Compl. ¶¶ 5, 8, 17–18; *see, e.g.*, *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (collective allegations against multiple defendants permissible where defendants alleged to have engaged in the same conduct). To the extent there is any remaining uncertainty about which Samsung entity designed, approved, or printed the boxes, that information is in Samsung's exclusive possession. Samsung cannot keep secret how it divided responsibility for the infringement between its affiliates, and then seek dismissal because Plaintiff has not pleaded that division with precision.[15]

## V. CONCLUSION

Plaintiff respectfully submits that the eight causes of action in the Complaint are adequately pled and Samsung's Motion should be denied in its entirety. If the Court determines there are any pleading deficiencies, Plaintiff respectfully requests leave to amend. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (amendment granted "with extreme liberality"); *Lopez*, 203 F.3d at 1127.

DATED: OCTOBER 15, 2026

CHRISTINE LEPERA
GABRIELLA N. ISMAJ
ALEXANDRA L. ANFUSO
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Gabriella N. Ismaj*
Christine Lepera (*pro hac vice*)
Gabriella N. Ismaj (SBN 301594)
Alexandra L. Anfuso (SBN 333440)

Attorneys for Plaintiff Dua Lipa

[15] Samsung's passing "volitional conduct" point (Mot. at 22) is inapposite. That requirement comes from cases about passive systems like servers and ISPs, not defendants that designed, printed, and sold physical packaging.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Dua Lipa, certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 15, 2026

*/s/ Gabriella N. Ismaj*
Gabriella N. Ismaj