Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

Thad C. Kodish (admitted *pro hac vice*)
tkodish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5002

Kristen McCallion (admitted *pro hac vice*)
mccallion@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

***Attorneys for Defendants***
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DUA LIPA,

Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD. and DOES 1-10, inclusive,

Defendants.

CASE NO. 2:26-cv-05019-CAS-MAR

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Hearing Date: December 14, 2026
Hearing Time: 10:00 a.m.
Courtroom: 8D
Judge: Hon. Christina A. Snyder

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Abandons the Trademark Infringement Theory She Pleaded, and Her Own Complaint Defeats False Endorsement .......... 2

1. Plaintiff Abandons the Trademark Infringement Theory of Counts III and IV .......... 3

a. Plaintiff Answers a False Endorsement Argument Samsung Never Made and Asks the Court to Disregard Her Trademark Infringement Claims .......... 3

b. A Person's Image Is Not a Trademark Absent Consistent Use as a Source Identifier .......... 4

2. Counts V and VI Plead Secondary Trademark Infringement and Fall With Plaintiff's Direct Trademark Infringement Claims .......... 5

a. Counts V and VI Plead Trademark Infringement, Not False Endorsement .......... 5

b. Plaintiff Identifies No Authority for Secondary Liability for False Endorsement .......... 6

3. The Packaging Image in Plaintiff's Own Complaint Contradicts Her Conclusory Allegation of Endorsement Confusion .......... 6

a. The Box Presents Plaintiff's Photograph as One Content Tile Among Several, and Prominence Is Not Endorsement .......... 7

b. Two Social-Media Comments That Never Mention Endorsement Do Not Plead Confusion .......... 8

B. California Law Does Not Govern a Non-Resident's Publicity Rights, and England Has the Greater Governmental Interest (Counts VII and VIII) .......... 8

1. Section 946 Applies Because the Right of Publicity Is Property for the Living as Well as the Dead .......... 9

a. Section 946 Applies the Law of Plaintiff's Domicile, Which She Admits Is Not California .......... 9

b. A Living Person's Right of Publicity Is Property, Not a Personal Tort ....9
c. Plaintiff's Ownership-Versus-Infringement Distinction Has No Support ....11
2. The Governmental Interest Test Independently Requires Applying English Law ....11
a. Plaintiff's Own Allegations Establish English Domicile ....11
b. The Governmental Interest Test Favors English Law ....12
i. Passing Off Is England's Counterpart to False Endorsement, Not Right of Publicity ....12
ii. California Has No Cognizable Interest in a Non-Resident's Publicity Claim ....14
iii. England's Interest Rests on Its Own Policy Choice, Not the Defendant's Nationality ....15
3. Plaintiff's "No Remedy" Objection Is Wrong ....16
C. The Complaint Never Pleads the Control Vicarious Liability Requires (Counts II and VI) ....16
1. The Complaint Alleges Only the High-Level Oversight *In re Google* Held Insufficient ....16
2. SEC's Ownership of the SAMSUNG Mark Cannot Supply the Control Allegations the Complaint Omits ....17
3. Count VI Fails to State a Claim Under the Stricter Standard for Vicarious Trademark Liability ....18
D. The Complaint Is a Shotgun Pleading That Never Says Which Defendant Did What and Incorporates Every Allegation Into Every Count ....19
1. Lumping SEA and SEC Together as "Defendants" Denies Each the Notice Rule 8 Requires ....19
a. Plaintiff's Own Authorities Show That Undifferentiated Pleading Against Two Affiliates Is Deficient ....19
b. Samsung's Count-by-Count Motion Shows the Complaint's Deficiency, Not Its Adequacy ....21

2. Incorporating Every Prior Count Buries the Allegations Supporting Each Claim ....... 21

3. Samsung Did Not Concede Direct Copyright Infringement, and the Complaint Never Identifies a Volitional Actor ....... 22

III. CONCLUSION ....... 23

CERTIFICATE OF COMPLIANCE ....... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) ....................12, 14, 15

*Alvarez v. Hill*,
518 F.3d 1152 (9th Cir. 2008) ....................4

*Brown v. Elec. Arts, Inc.*,
2009 WL 8763151 (C.D. Cal. Sept. 23, 2009), *aff'd*, 724 F.3d 1235 (9th Cir. 2013) ....................7

*Cairns v. Franklin Mint Co.*,
107 F. Supp. 2d 1212 (C.D. Cal. 2000) ....................7

*Cairns v. Franklin Mint Co.,*
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ....................9

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ....................7, 16

*Carr v. United States*,
2006 WL 3355098 (E.D. Cal. Nov. 17, 2006) ....................21

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ....................10

*Douglas v. Hello! Ltd.*,
[2007] UKHL 21 ....................13, 15

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ....................10, 15

*Espinosa v. Bluemercury, Inc.*,
2017 WL 1079553 (N.D. Cal. Mar. 22, 2017) ....................21, 22

*ETW Corp. v. Jireh Publishing, Inc.*,
332 F.3d 915 (6th Cir. 2003) ....................4

*Fenty v. Arcadia Group Brands Ltd. (Topshop)*
[2015] EWCA Civ 3 ....................13

*Fenty v. Arcadia Grp. Brands Ltd.*,
[2013] EWHC 2310 (Ch).......................................................................13, 15

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
688 F. Supp. 2d 1148 (D. Nev. 2010) ........................................................4

*Fleury v. Harper & Row, Publishers, Inc.*,
698 F.2d 1022 (9th Cir. 1983) ...................................................................10

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) ...............................................................19, 20

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025)....................................................16, 17, 18

*In re Google Generative AI Copyright Litig., No. 5:23-cv-03440-EKL,*
*ECF No. 91 (N.D. Cal. Dec. 20, 2024)*...................................................17, 18

*Hurtado v. Superior Court*,
11 Cal. 3d 574 (1974) ..................................................................................15

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982).......................................................................................6

*Irvine v. Talksport Ltd.*,
[2002]...........................................................................................................13

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*
153 F.3d 82 (2d Cir. 1998) ............................................................................11

*Khachatryan v. 1 Hotel West Hollywood LLC*,
2024 WL 3015504 (C.D. Cal. June 14, 2024)...............................................20

*Lepore v. NL Brand Holdings LLC*,
No. 16 Civ. 8115, 2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017) .......................6

*Lightbourne v. Printroom Inc.*,
307 F.R.D. 593 (C.D. Cal. 2015)...................................................................10

*Love v. Associated Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) ..................................................................*passim*

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ......................................................................20

*Meyer v. City of Clearlake*,
2009 WL 799396 (N.D. Cal. Mar. 24, 2009) .......... 21

*Midler v. Ford Motor Co.*,
849 F.2d 460 (9th Cir. 1988) .......... 10

*Miller v. Easy Day Studios Pty Ltd.*,
2021 WL 4209205 (S.D. Cal. Sept. 16, 2021) .......... 7, 8

*Modern Floor Specialists, Inc. v. City of Los Angeles*,
2026 WL 915292 (C.D. Cal. Apr. 3, 2026) .......... 19

*Morris v. Burrkhouse*,
2021 WL 4786676 (C.D. Cal. May 21, 2021) .......... 12

*Motium, Inc. v. Leung*,
2020 WL 6050596 (C.D. Cal. June 1, 2020) .......... 19

*Negrete v. Hub Grp. Trucking, Inc.*,
No. 5:26-CV-01866-RGK-DTB, 2026 WL 1834386 (C.D. Cal. June 25, 2026) .......... 11

*Pena v. Int'l Med. Devices, Inc.*,
2023 WL 5667538 (C.D. Cal. Jan. 10, 2023) .......... 20

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .......... 19

*Pirone v. MacMillan, Inc.*,
894 F.2d 579 (2d Cir. 1990) .......... 4

*Rams v. Def Jam Recordings*,
202 F. Supp. 3d 376 (S.D.N.Y. 2016) .......... 10

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) .......... 18

*Scott and Addison, LLC v. Pinkblush.com*,
2021 WL 3579413 (C.D. Cal. Apr. 5, 2021) .......... 8

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) .......... 14

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 6, 12

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) .......... 22

*Taira v. Honeywell Int'l, Inc.*,
2019 WL 13252529 (C.D. Cal. Oct. 4, 2019) .......... 20

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 20

**Statutes**

Cal. Civ. Code § 946 .......... *passim*

Cal. Civ. Code § 3344(a) .......... 10, 13

Lanham Act § 43(a) .......... 3

## I. INTRODUCTION

Plaintiff defends a complaint she did not file. Instead of defending her trademark infringement claims, Plaintiff argues in favor of her false endorsement claims. Moreover, Plaintiff disclaims an English domicile without claiming another, and she also asks the Court to infer SEC's control over the accused packaging from an extrinsic trademark registration rather than utilizing facts that should have been alleged in her Complaint. The Opposition reaffirms the arguments in Defendants' Motion to Dismiss: that the Complaint before the Court does not state any claim on which relief may be granted. Accordingly, Defendants' Motion to Dismiss should be granted.

Plaintiff's Complaint expressly pled both (a) trademark infringement and (b) false endorsement, with Count III containing an amalgam of both. But in her Opposition to Samsung's motion to dismiss the ***trademark infringement*** claims, she does not counter this argument directly. The Opposition defends only the false endorsement claim. As for the trademark infringement claims, Plaintiff essentially requests, in a footnote, that the Court disregard them. Opp'n at 14 n.4 ("Samsung appears focused on the 'trademark infringement' label on Plaintiff's third and fourth causes of action . . . . That label does not automatically convert Plaintiff's false endorsement claim into a separate (or additional) claim."). The Court should accept that invitation and dismiss the trademark infringement theory in Counts III and IV, along with the secondary trademark claims built on it (Counts V and VI), which no authority permits recasting as secondary false endorsement. The Court should also dismiss Plaintiff's false endorsement claim because the Complaint's own depiction of the accused packaging confirms it depicts exemplary content available on the "XITE HITS" streaming service, refuting her conclusory allegation that consumers would be confused into believing she endorses Samsung televisions.

Plaintiff's right of publicity claims (Counts VII and VIII) must be dismissed because California law reaches them only if Plaintiff is domiciled in California or

California has a cognizable interest in the claim, and neither is true here. First, Plaintiff admits she is not domiciled in California, and thus under § 946 California law does not govern. Second, California has no governmental interest in a non-resident's claim, while England—where the Complaint places her domicile—has deliberately declined to recognize the right she asserts. Plaintiff warns that dismissal would leave her and other foreign celebrities with "no remedy," but she is wrong. The choice-of-law principles that bar her right of publicity claims do not impact her copyright and false endorsement claims.

Plaintiff's vicarious liability claims (Counts II and VI) must be dismissed because the Complaint pleads no facts showing that SEC controlled SEA's alleged infringement. Plaintiff's response—that SEC's ownership of the SAMSUNG mark printed on the packaging establishes control (Opp'n at 9)—appears nowhere in her Complaint. And owning a house mark is the most ordinary incident of a parent-subsidiary relationship; it does not show that the parent controlled the subsidiary's alleged decision to place a particular photograph on product packaging.

Finally, the Complaint is a shotgun pleading: it attributes nearly every act to "Defendants" collectively, and each count incorporates every paragraph before it, so that Count VIII sweeps in all 104 preceding paragraphs. That alone warrants dismissal of the entire Complaint. Plaintiff disputes neither defect, and her responses—that two defendants are too few to matter and that Samsung's Motion shows adequate notice—find no support in her own authority or in Rule 8.

## II. ARGUMENT

### A. Plaintiff Abandons the Trademark Infringement Theory She Pleaded, and Her Own Complaint Defeats False Endorsement

Plaintiff's Opposition defends only her false endorsement claims, leaving the Motion's trademark infringement arguments unrebutted. The Complaint in fact pleads two distinct theories: (1) trademark infringement in Counts III through VI and (2)

false endorsement, commingled with trademark infringement in Count III.[1] By arguing only that celebrities may bring false endorsement claims, which Samsung does not dispute, Plaintiff effectively concedes that she did not adequately plead trademark infringement claims, and the Court should dismiss those claims, along with Counts V and VI for contributory and vicarious trademark infringement. Plaintiff's false endorsement claim likewise fails to state a claim because the Complaint, taken as a whole, does not plausibly suggest confusion.

**1. Plaintiff Abandons the Trademark Infringement Theory of Counts III and IV**

A person's image or likeness is not a protectable trademark unless a particular image is consistently used as a trademark for identifying specific goods. Plaintiff alleges no such use, and her Opposition does not defend the claim.

**a. Plaintiff Answers a False Endorsement Argument Samsung Never Made and Asks the Court to Disregard Her Trademark Infringement Claims**

In defending her false endorsement claim, Plaintiff's Opposition attacks a position Samsung never took. The strawman argument that Plaintiff rebuts is that "Plaintiff cannot state a claim for false endorsement under Lanham Act § 43(a)." Opp'n at 8. However, Samsung argues no such thing.

Her only response on trademark infringement is found in a footnote disclaiming that she ever pleaded trademark infringement: "Samsung appears focused on the 'trademark infringement' label on Plaintiff's third and fourth causes of action . . . . That label does not automatically convert Plaintiff's false endorsement claim into a

---

[1] *Compare* Compl. at 17 (Third Cause of Action for "***False Endorsement <u>and</u> Trademark Infringement***"), ¶ 62 (alleging the use "constitutes ***false endorsement <u>and</u> trademark infringement***"), *with id.* at 19, 20, 22 (Fourth, Fifth, and Sixth Causes of Action asserting only common law, contributory, and vicarious "***Trademark Infringement***"), ¶¶ 69, 78, 87 (alleging infringement of Plaintiff's "***trademark rights***"). All emphases herein added, unless noted otherwise.

separate (or additional) claim." Opp'n at 14 n.4. Plaintiff thus apparently contends she never pleaded any trademark infringement claims, only false endorsement claims. But the Complaint itself refutes that—referring eleven times to "trademark infringement," including expressly as an additional theory beyond false endorsement. *E.g.*, Compl. ¶ 62 ("Defendants' unauthorized use of the DL Image, as described above, constitutes ***false endorsement*** ***<u>and</u>*** ***trademark infringement***."). Because Plaintiff does not defend her trademark infringement claims, the Court should dismiss them.

**b. A Person's Image Is Not a Trademark Absent Consistent Use as a Source Identifier**

Plaintiff claims infringement of an unregistered mark without alleging that her name, image or likeness has been consistently used as a source identifier for particular goods or services. Compl. ¶¶ 61–62, 69–70. Absent such use, a person's "brand, image or likeness" cannot serve as a trademark. *See, e.g., Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148, 1159 (D. Nev. 2010) ("'[A]s a general rule, a person's image or likeness cannot function as a trademark,' except perhaps in the limited circumstance where one specific photograph consistently is used as a mark.") (quoting *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 922 (6th Cir. 2003) and citing *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990)).

Plaintiff argues that these cases address only whether registered word marks can extend to images. Opp'n at 13 n.3. But the cases hold that, registered mark or not, a celebrity holds no trademark in every image of her absent the consistent use of a particular image as a source identifier – and unlike the plaintiffs in *ETW*, *Pirone*, and *Fifty-Six Hope Road Music*, Plaintiff does not even allege a registered mark.[2]

[2] *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008), on which Plaintiff's footnote relies for the proposition that "[f]actual allegations govern over titles," does not support her position. Opp'n at 14 n.4. *Alvarez* held that factual allegations in a pro se prisoner's complaint gave fair notice of his claim even without naming the applicable statute. *Id.* That is a rule about a missing label on facts that otherwise state a claim.

The Court should dismiss her trademark infringement claims.

**2. Counts V and VI Plead Secondary Trademark Infringement and Fall With Plaintiff's Direct Trademark Infringement Claims**

Because Counts V and VI only charge SEC with secondary liability for trademark infringement, they must be dismissed along with the direct trademark infringement claims in Counts III and IV. Count V ("Contributory Trademark Infringement") and Count VI ("Vicarious Trademark Infringement") each rest on the trademark infringement theory pled in those counts. Compl. ¶¶ 77, 82, 87. By blurring the line between trademark infringement and false endorsement claims (Opp'n at 24), Plaintiff ignores both what her Complaint actually pleads—trademark infringement, not false endorsement—and the lack of authority for secondary false endorsement.

**a. Counts V and VI Plead Trademark Infringement, Not False Endorsement**

The Complaint itself refutes Plaintiff's attempt to tie Count V to false endorsement. Count V's operative paragraph makes trademark infringement the alleged wrong and endorsement confusion merely its effect. It alleges that "Defendants have directly and willfully infringed Plaintiff's ***trademark rights*** in her name, image, and likeness," and that this conduct "is likely to . . . confuse or deceive the general public as to the endorsement . . . of Plaintiff . . . ." Compl. ¶ 77. Count V's liability paragraph confirms the framing: "[t]he aforesaid acts of SEC, Ltd. constitute[] contributory trademark infringement." *Id.* ¶ 82. Count VI likewise alleges trademark infringement that may cause endorsement confusion. *Compare* Compl. ¶ 62 (alleging both "false endorsement and trademark infringement"), *with* ¶ 92

---

Here, Plaintiff pleaded a legal theory (trademark infringement) without pleading any facts that support it.

(alleging "vicarious trademark infringement"). Neither count ever pleads a false endorsement theory.

**b. Plaintiff Identifies No Authority for Secondary Liability for False Endorsement**

Even recast as false endorsement-related claims, Counts V and VI should still be dismissed because Plaintiff offers no authority extending secondary liability to claims of false endorsement. The Lanham Act's contributory liability framework was developed for trademark infringement: a manufacturer or distributor is contributorily liable if it "intentionally induces another to infringe a trademark" or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853–54 (1982). At least one court asked to extend that framework to false endorsement found no authority for doing so. *See Lepore v. NL Brand Holdings LLC*, No. 16 Civ. 8115, 2017 WL 4712633, at *3, *5 (S.D.N.Y. Sept. 28, 2017) ("[D]espite all of the cases Plaintiffs cite in their Opposition discussing the concepts of contributory and vicarious liability, not a single one arises in the context of false endorsement" which has "yet to be applied in the context of false endorsement"). Plaintiff cites no case recognizing contributory false endorsement, and Samsung is aware of none.

**3. The Packaging Image in Plaintiff's Own Complaint Contradicts Her Conclusory Allegation of Endorsement Confusion**

The packaging image in Plaintiff's Complaint contradicts her conclusory allegation of endorsement confusion. Plaintiff does not dispute that a court need not accept a conclusory allegation contradicted by materials referred to in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). She argues instead that confusion is a fact question, that the photograph is "the dominant element" on the box, and that two social media comments show actual confusion. Opp'n at 14–16. But courts dismiss false endorsement claims at the pleading stage

where, as here, the plaintiff's own allegations show a use that does not plausibly suggest endorsement. *See Miller v. Easy Day Studios Pty Ltd.*, 2021 WL 4209205, at *8 (S.D. Cal. Sept. 16, 2021); *Brown v. Elec. Arts, Inc.*, 2009 WL 8763151, at *5 (C.D. Cal. Sept. 23, 2009), *aff'd*, 724 F.3d 1235 (9th Cir. 2013).

**a. The Box Presents Plaintiff's Photograph as One Content Tile Among Several, and Prominence Is Not Endorsement**

The box Plaintiff reproduces in her Complaint presents her photograph as an example of channel content, not as an endorsement. Her photograph (the "DL Image") is one piece of available content among several. Compl. ¶¶ 6, 35. It is accompanied by a button labeled "Stream Now." *Id.* The box thus refutes Plaintiff's assertion that "nothing identifies her as channel content." Opp'n at 15.

Plaintiff's answer that the photograph is "the dominant element" on the box (Opp'n at 15) confuses prominence with endorsement. A film poster on a streaming interface does not suggest that the film's actors endorse the television; a musician's photograph displayed as available content is no different. The question is whether the use "suggest[s] sponsorship or approval," not how large the image appears. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) ("*Cairns II*"); *see also Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) ("*Cairns III*") ("likelihood of customer confusion is the determinative issue").

Plaintiff distinguishes *Brown* and *Miller* as First Amendment cases (Opp'n at 16 n.6), but that misses their point. Both explained that public recognition of a plaintiff's likeness in a defendant's product does not make a use "misleading," as false endorsement requires; the question is whether consumers would be misled into believing the plaintiff endorses the product. 2021 WL 4209205, *8 Here, like in both cases, nothing about the packaging depicted in Plaintiff's Complaint suggests Plaintiff endorses Samsung products.

**b. Two Social-Media Comments That Never Mention Endorsement Do Not Plead Confusion**

The two social media comments on which Plaintiff relies to suggest confusion on the part of the general public or Plaintiff's fans about whether she endorsed Samsung's televisions (Compl. ¶¶ 34–35) only suggest the commenters recognized Plaintiff, not that they mistakenly believed her to endorse the product. Neither mentions endorsement, sponsorship, or affiliation. *Miller* drew that line in rejecting comparable evidence: "The issue here isn't whether other consumers could simply recognize [plaintiff's] likeness in the game, but rather whether they would be misled into believing his association with the game means he is somehow endorsing it." 2021 WL 4209205, at *8.

Plaintiff's reliance on *Scott and Addison, LLC v. Pinkblush.com* is misplaced, because that case addressed whether actual confusion must be pleaded, not whether comments like these suffice to show endorsement. Opp'n at 16 (citing 2021 WL 3579413, at *1–2 (C.D. Cal. Apr. 5, 2021)). The plaintiff there sued a competitor for using a confusingly similar name; the court denied dismissal despite the complaint's lack of actual confusion evidence. That a plaintiff is not ***required*** to plead actual confusion does not make two comments that never mention endorsement ***sufficient*** to plead confusion about a musician's endorsement. The Court should dismiss Plaintiff's self-defeating false endorsement claim.

**B. California Law Does Not Govern a Non-Resident's Publicity Rights, and England Has the Greater Governmental Interest (Counts VII and VIII)**

The Court should dismiss Plaintiff's right of publicity claims for two independent reasons. First, under Cal. Civ. Code § 946, the law of the owner's domicile governs a right of publicity, whether the owner is living or dead, and Plaintiff admits she is not domiciled in California. Second, under the governmental interest test, the Complaint's allegations place her domicile in England, which has deliberately

chosen not to recognize a right of publicity. Plaintiff's objection that this leaves her without a remedy ignores her other pleaded claims and cannot override choice-of-law principles.

**1. Section 946 Applies Because the Right of Publicity Is Property for the Living as Well as the Dead**

Section 946 requires that Plaintiff's publicity claims be governed by the law of her domicile, which is not California, and none of her arguments against applying Section 946 to a living person withstands scrutiny.

**a. Section 946 Applies the Law of Plaintiff's Domicile, Which She Admits Is Not California**

Plaintiff's own admission ends the § 946 inquiry. Under the statute, personal property "follow[s] the person of its owner" and is "governed by the law of [the owner's] domicile." Cal. Civ. Code § 946. Plaintiff concedes that she "is domiciled outside of the United States." Opp'n at 10. California law therefore cannot govern her publicity rights, and the Court should dismiss Counts VII and VIII.

A court in this district has applied § 946 exactly this way. In *Cairns v. Franklin Mint Co.*, the court held that whether Princess Diana, a decedent domiciled in Great Britain, had any right of publicity at all was "a question controlled by the law of her domicile." 24 F. Supp. 2d 1013, 1026 (C.D. Cal. 1998) ("*Cairns I*"). Although *Cairns I* addressed the post-mortem right, its reasoning applies equally here. Because Plaintiff is not domiciled in California, no California right of publicity exists.

**b. A Living Person's Right of Publicity Is Property, Not a Personal Tort**

Plaintiff's argument that § 946 reaches only the post-mortem right is mistaken: the courts that have addressed the question treat the right as property whether its owner is living or dead. She reasons that § 3344.1(b) expressly labels the post-mortem right "property," while § 3344, which governs a living person's claim, contains no comparable language. Opp'n at 17–18 (citing *Cairns III*, 292 F.3d at 1146–48;

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006 (9th Cir. 2001)). But the California Supreme Court treats the right of publicity as property without distinguishing the living from the dead: "[T]he right of publicity, like copyright, protects a form of intellectual ***property*** that society deems to have some social utility." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001). *Comedy III* treats the living person's statutory right under § 3344 and the post-mortem right under former § 990 (now § 3344.1) as two expressions of a single underlying right, the latter "evidently modeled on" the former. *Id.* at 391–92. The Ninth Circuit agrees, holding that a living plaintiff's common-law rights are, by analogy to the post-mortem statute, "also property rights." *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988). And a court in this district characterized a living student athlete's claim under § 3344 as a property right. *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D. Cal. 2015).[3]

None of Plaintiff's "personal tort" authorities says what she claims. She asserts that "[a] living person's right of publicity . . . is a personal tort." Opp'n at 17; *see also id.* at 19 (citing *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir. 1983); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609–11 (9th Cir. 2010); *Downing*, 265 F.3d at 1005). However, *Fleury* never discusses the right of publicity, only libel and invasion of privacy. 698 F.2d at 1025. *Love* applies the governmental interest test without characterizing right of publicity claims as either tort or property, and *Downing* never mentions § 946 or the property/tort distinction, because the parties never raised it. 265 F.3d at 1006.

---

[3] The district court's footnote in *Cairns I*—noting in *dicta* it was not deciding whether a living person's right of publicity was property—predates *Comedy III* and *Lightbourne*, which have since confirmed that a living person's right of publicity is property. Opp'n at 18 n.7 (citing 24 F. Supp. 2d at 1028 n.11). And *Rams v. Def Jam Recordings* merely quotes *Cairns I*'s footnote's observation that § 3344 "contains no definitive statement" that the right of publicity is property. 202 F. Supp. 3d 376, 386 (S.D.N.Y. 2016).

**c. Plaintiff's Ownership-Versus-Infringement Distinction Has No Support**

Plaintiff's argument that "[o]wnership of intellectual property may be determined by the law of the owner's domicile, but infringement is governed by the law where the infringement occurred" does not support her position. Opp'n at 18–19 n.7. The Second Circuit in *Itar-Tass Russian News Agency v. Russian Kurier*, *Inc*. 153 F.3d 82 (2d Cir. 1998) held that the law of the jurisdiction with the closest relationship to the right determines copyright ownership and the scope of rights. *Id.* at 92. Applying Russian law, the court held the newspaper plaintiffs had no exclusive right in the works (their employees did) before ever reaching the question of U.S. infringement. *Id.* at 85, 90–92. That is precisely the threshold question here: whether Plaintiff even has a California right of publicity. Under § 946, she does not.

**2. The Governmental Interest Test Independently Requires Applying English Law**

Even if § 946 did not govern Plaintiff's publicity claims, the Complaint's allegations point to an English domicile, and the governmental interest three-step test dictates that English law governs.

**a. Plaintiff's Own Allegations Establish English Domicile**

Plaintiff admits she is not domiciled in California or anywhere else in the United States (Opp'n at 10), and the Court can make the reasonable inference from the allegations in her Complaint that she is domiciled in England. *See Negrete v. Hub Grp. Trucking, Inc*., No. 5:26-CV-01866-RGK-DTB, 2026 WL 1834386, at *3 (C.D. Cal. June 25, 2026) (drawing "reasonable inference" of plaintiff's place of domicile from complaint). The Complaint's allegations of chart performance, awards, and press coverage concentrated in the United Kingdom (Compl. ¶ 2) all support that inference, and no allegations support a different place of domicile.

The Complaint's own allegations contradict Plaintiff's contention that the same allegations would place her domicile in the United States. Opp'n at 17. Both of her

albums reached number one in the United Kingdom; neither did so on any U.S. chart the Complaint identifies. Compl. ¶ 2. The Complaint also pleads seven Brit Awards and a *British GQ* cover, *id.*, with no comparable U.S.-specific accolade. *Id*. The rule that genuinely competing inferences favor the plaintiff at the pleading stage, *Morris v. Burrkhouse*, 2021 WL 4786676, at *1 (C.D. Cal. May 21, 2021), does not rescue her. That rule presupposes two comparably plausible readings, and a court need not accept "unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. Reading Plaintiff's allegations as equally consistent with U.S. domicile is not a reasonable deduction.

**b. The Governmental Interest Test Favors English Law**

Based on Plaintiff's English domicile, the governmental interest test dictates that English law applies. Each of Plaintiff's three counterarguments—(i) that English and California law do not differ, (ii) that England has no interest because the exploitation occurred in California rather than England, and (iii) that applying English law would serve no English interest—is incorrect.

**i. Passing Off Is England's Counterpart to False Endorsement, Not Right of Publicity**

The first step—whether California and English laws differ—is not close: California recognizes a right of publicity; England does not. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (first step of governmental interest test asks "whether the laws [of the competing jurisdictions] differ as applied to the relevant transaction").

English passing off law does not supply the "substantially congruent" remedy Plaintiff claims. Opp'n at 19–20, 24. Passing off is England's counterpart to the false endorsement claim in Count III, not the right of publicity in Counts VII and VIII. It requires a misrepresentation, in the celebrity context a false suggestion of endorsement. California's statutory right requires no such showing; it reaches the knowing, unconsented use of a person's name or likeness on products or in

advertising, whether consumers are deceived about endorsement or not. Cal. Civ. Code § 3344(a).

The Ninth Circuit already accounted for passing off in concluding that England has no right of publicity. In *Love*, it noted that England provides "certain other limited protections against commercial misappropriation, including copyright, trademark, and the tort of 'passing off.'" 611 F.3d at 611. Yet it still concluded that England "has manifested a policy choice favoring unrestricted competition in the area of commercial exploitation of names and likenesses." *Id.*

Plaintiff's own authority confirms that English law recognizes no right of publicity in one's image. In *Fenty v. Arcadia Group Brands Ltd. (Topshop)*, the Court of Appeal of England and Wales held: "There is in English law no 'image right' or 'character right' which allows a celebrity to control the use of his or her name or image." [2015] EWCA Civ 3, ¶ 29 (Kitchin, L.J.). Celebrities must look elsewhere: "A celebrity seeking to control the use of his or her image must therefore rely upon some other cause of action such as breach of contract, breach of confidence, infringement of copyright or, as in this case, passing off." *Id.* ¶ 33. The High Court, drawing on the House of Lords, likewise said that "there is today in England no such thing as a free standing general right by a famous person (or anyone else) to control the reproduction of their image," *Fenty v. Arcadia Grp. Brands Ltd.*, [2013] EWHC 2310 (Ch) ¶ 2 (citing House of Lords' decision in *Douglas v. Hello! Ltd.*, [2007] UKHL 21).

*Irvine v. Talksport Ltd.*, [2002] EWHC 367 (Ch.), on which Plaintiff relies, proves Defendants' point. Opp'n at 20 (incorrectly citing [2002] EWCA 367 (Ch.)). The claimant there succeeded only by proving passing off's required elements: goodwill, a misrepresentation creating a false impression of endorsement, and resulting damage. The court itself repeatedly described the case as a "false endorsement" case. Rihanna prevailed in *Fenty* on the same elements. Plaintiff

identifies no authority in which passing off reached unauthorized commercial use of a person's image without a misrepresentation as to endorsement.

**ii. California Has No Cognizable Interest in a Non-Resident's Publicity Claim**

The governmental interest test's second step ends the analysis: with no California interest in play, there is no true conflict. Because the two jurisdictions' laws differ, "the court must determine whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied." *Abogados*, 223 F.3d at 934 (describing second step of governmental interest test). As the Ninth Circuit explained in *Love*, "[a]lthough California recognizes both a statutory and common law right of publicity, and England recognizes neither, this is not a case of true conflict. ***California has no interest in applying its law to the conduct in question***." 611 F.3d at 610 (citations omitted). English law therefore applies. *Id.*

Plaintiff's claim that California's interest is stronger, and her attempt to distinguish *Love* because the conduct there occurred mainly in England, misreads *Love.* Opp'n at 22. *Love* did not hold that California's interest follows a product wherever it is sold; its no-conflict finding rested equally on plaintiff not being a California citizen. 611 F.3d at 609–10. California's interest in its publicity law rests on "safeguarding its citizens from the diminution in value of their names and likenesses," and the court found none where "[n]one of the parties remaining in this suit is a citizen of California." *Id.* at 610. So too here: Plaintiff admits she is not a California domiciliary (Opp'n at 10), SEC is a Korean company (Compl. ¶ 18), and SEA is a New York corporation (*id.* ¶ 17).[4]

---

[4] *Sinatra v. Nat'l Enquirer, Inc.* does not dictate a different result. 854 F.2d 1191, 1197 (9th Cir. 1988). *Sinatra* is a personal jurisdiction decision—not a choice-of-law case—and it located the alleged injury in California because Sinatra himself "conducts his business from California, he licenses his name in California, and the center of his business is in California." Plaintiff alleges nothing comparable.

**iii. England's Interest Rests on Its Own Policy Choice, Not the Defendant's Nationality**

Even if a true conflict existed, England's interest would be the more impaired, so English law would still govern. *Abogados*, 223 F.3d at 934 (explaining third step of governmental interest test). Plaintiff's argument that England has "nothing at stake" (Opp'n at 21), built on *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 (1974), inverts the inquiry. She reasons that neither SEA nor SEC is English, that England has "no interest in shielding out-of-country companies from liability," and that England lacks "any cognizable interest in denying its own (alleged) resident a remedy." Opp'n at 21. That argument fails for two reasons.

First, *Hurtado* is inapposite on its own terms. The Mexican damages limitation there existed to protect Mexican defendants, so it did not apply to non-Mexican defendants. 11 Cal. 3d at 581. England's choice is different in kind. Unlike Hawaii's mere absence of a statute in *Downing,* England's lack of a right of publicity is a deliberate choice, and it applies no matter who the defendant is. *Love*, 611 F.3d at 611; *Fenty,* [2015] EWCA Civ 3, ¶ 29; *Douglas*, [2007] UKHL 21. *Love* thus held that even assuming a true conflict existed, England's interest would still predominate, because California's interest in protecting a plaintiff with no California citizenship or residence "is not nearly as significant as England's interest" in not regulating conduct it has deliberately chosen not to restrict. 611 F.3d at 611. That is the opposite of having "nothing at stake." Opp'n at 21.

Second, even if England would not object to relief under another jurisdiction's law, that gives California no affirmative interest in applying its law to a non-resident. The question under *Love* is not whose interest Samsung's conduct implicates, but whether ***California*** has any "interest in applying its law to the conduct in question." 611 F.3d at 610. California's interest rests on safeguarding its own citizens—of which Plaintiff is not one—from harm, not on regulating sales within its borders generally. *Id*.

### 3. Plaintiff's "No Remedy" Objection Is Wrong

Samsung's choice-of-law arguments do not leave Plaintiff "with no remedy," Opp'n at 8; they have no bearing on her copyright and false endorsement claims. Moreover, the outcome Samsung seeks—that California publicity law does not attach to a non-resident's image simply because a product bearing it is sold here—is the one the Ninth Circuit reached in *Cairns III* and again in *Love*. 292 F.3d at 1147–48; 611 F.3d at 609–11. Nor does Samsung's position depend on whether a celebrity's home country has "a publicity statute." Opp'n at 9. Section 946 turns on domicile. And the governmental interest test, as *Love* applied it, gives effect to England's deliberate "policy choice favoring unrestricted competition" in this area. 611 F.3d at 611.

## C. The Complaint Never Pleads the Control Vicarious Liability Requires (Counts II and VI)

The Complaint alleges that SEC is SEA's corporate parent and then extrapolates that, since SEC at times "participates in and influences" SEA's business decisions, it exercised sufficient control over SEA's accused conduct to establish vicarious liability. As Samsung's Motion showed, however, ordinary incidents of a parent-subsidiary relationship are insufficient to support a claim for vicarious copyright (Count II) infringement or trademark (Count VI) infringement against the parent entity for the actions of a subsidiary. None of Plaintiff's three responses effectively addresses this defect.

### 1. The Complaint Alleges Only the High-Level Oversight *In re Google* Held Insufficient

Plaintiff's effort to distinguish *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903 (N.D. Cal. 2025), merely describes the court's conclusion, rather than addressing that her claims would not survive the test it applied. Plaintiff says the plaintiffs there "'allege[d] nothing more than a typical parent-subsidiary relationship[.]'" Opp'n at 25 n.12 (quoting *id.* at 915). Not so: the plaintiffs there alleged that Alphabet "exercises direct oversight and control" over its subsidiary's AI

business, *id*. at 919, including orchestrating the merger of two of its AI units, which is significantly more than a typical parent-subsidiary relationship. *In re Google Generative AI Copyright Litig., No. 5:23-cv-03440-EKL, ECF No. 91 (N.D. Cal. Dec. 20, 2024)* ¶ 184. Yet the court held those allegations insufficient because they did "not establish that Alphabet exercised greater control over Google than any parent company may exercise over its subsidiary." 809 F. Supp. 3d at 918.

Plaintiff's allegations about SEC's alleged control over SEA are no stronger than those in *In re Google*. The Complaint alleges that SEC "participates in and influences key business decisions of SEA, Inc., including with respect to the creation, approval, licensing, and distribution of the Infringing Products." Compl. ¶ 19. That is a product-category allegation no different in kind from the AI-business allegations rejected in *In re Google*. Plaintiff alleges no facts suggesting that SEC was involved in selecting or approving the DL Image for the accused packaging or otherwise controlling SEA's alleged direct infringement.

The other allegations Plaintiff cites describe SEC's general corporate role, not control over SEA's alleged infringement: that SEC "[m]anufactured the Infringing Products" (Compl. ¶¶ 5, 18) and "[o]perates and controls www.samsung.com" (*id.* ¶¶ 18, 26). These allegations say nothing about whether SEC controlled SEA's alleged infringement, such as the decision to place Plaintiff's image on the accused packaging.

### 2. SEC's Ownership of the SAMSUNG Mark Cannot Supply the Control Allegations the Complaint Omits

Plaintiff's principal new argument for SEC's vicarious liability appears nowhere in her Complaint. She contends that because SEC owns the SAMSUNG word mark printed on the box, it is "implausible" that SEA used the mark without SEC's authorization, which she then extrapolates to mean that SEC "had the power to stop" sales. Opp'n at 25–26 (citing RJN, Exs. 1–2); *see also id.* at 9 (SEC "cannot bury its head in the sand"). Whether or not those leaps in attribution are reasonable, a

plaintiff cannot amend her pleading through an opposition brief. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Plaintiff's new allegations must therefore be ignored.

Plaintiff's mark-ownership theory is insufficient to save her vicarious liability claims in any event. A parent's ownership of the house mark its subsidiary uses is the most ordinary incident of a parent-subsidiary relationship—precisely the "ordinary control that any parent company may exercise over its subsidiary" that cannot support vicarious liability. *In re Google*, 809 F. Supp. 3d at 918. Authority over the word SAMSUNG says nothing about which entity selected, approved, or printed a photograph on a particular box. Plaintiff's inference would make every trademark-owning parent vicariously liable for anything its subsidiary sells; it is the parent-subsidiary theory *In re Google* rejected, relabeled.

Plaintiff's defense of her information-and-belief allegations (Opp'n at 25–26) fails the very test she quotes, because those allegations rest on nothing but corporate structure. She correctly notes that a plaintiff may plead on information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). But the Complaint's information-and-belief allegations, such as that SEC allegedly instructed SEA to continue selling the accused products, rest only on speculation from the parent-subsidiary relationship, not on facts about SEC's involvement in this packaging decision. That generic inference does not make SEC's involvement plausible; it is the one *In re Google* rejected.

**3. Count VI Fails to State a Claim Under the Stricter Standard for Vicarious Trademark Liability**

Because the Complaint does not plead facts establishing the requisite control for copyright purposes, it cannot plead the stricter control trademark law demands. Vicarious trademark liability requires "an apparent or actual partnership," "authority

to bind one another," or "joint ownership or control over the infringing product." *Motium, Inc. v. Leung,* 2020 WL 6050596, at *4 (C.D. Cal. June 1, 2020). "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007).[5]

**D. The Complaint Is a Shotgun Pleading That Never Says Which Defendant Did What and Incorporates Every Allegation Into Every Count**

The Motion identified two independent defects: (1) the Complaint attributes conduct to "Defendants" collectively without saying whether SEA or SEC performed any particular act and (2) each count incorporates every paragraph before it, so that Count VIII sweeps in all 104 preceding paragraphs regardless of relevance. Plaintiff disputes neither point. She even acknowledges her own "uncertainty about which Samsung entity designed, approved, or printed the boxes." Opp'n at 29.

**1. Lumping SEA and SEC Together as "Defendants" Denies Each the Notice Rule 8 Requires**

Neither Plaintiff's authorities nor Samsung's Motion can supply the defendant-by-defendant notice the Complaint omits.

**a. Plaintiff's Own Authorities Show That Undifferentiated Pleading Against Two Affiliates Is Deficient**

Plaintiff defends her undifferentiated allegations against SEA and SEC because Samsung's authorities involved collective allegations against more defendants than the two here. Opp'n at 28 (discussing *Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026), *Modern Floor Specialists, Inc. v. City of Los Angeles*, 2026 WL 915292,

[5] Count VI also falls with the abandoned trademark infringement theory on which it rests. *See* Section A.2, *supra*.

at *3 (C.D. Cal. Apr. 3, 2026), and *Magluta v. Samples,* 256 F.3d 1282, 1284–85 (11th Cir. 2001)). But *Gibson*'s admonition against "assert[ing] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" sets no minimum number of defendants. 165 F.4th at 1288. Two defendants satisfy "multiple" as readily as fourteen. The question is whether the pleading gives each defendant adequate notice of the claims against it and their grounds. *Id.* at 1290.

Plaintiff's remaining authorities confirm that collective allegations are permissible when each defendant is "alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1184 (9th Cir. 2016). The court in *Khachatryan v. 1 Hotel West Hollywood LLC* thus granted a motion to dismiss because "the allegations described in Plaintiffs' Complaint are collectively pleaded against all Defendants," without identifying which defendant "committed any particular act," not just because the complaint failed to mention two of the defendants in the substantive allegations. 2024 WL 3015504, *9 (C.D. Cal. June 14, 2024); Opp'n at 28. Plaintiff's cases, by contrast, upheld collective allegations only where the complaint specifically identified each defendant's conduct or role. *See Taira v. Honeywell Int'l, Inc.*, 2019 WL 13252529, at *2–3 (C.D. Cal. Oct. 4, 2019) (complaint identified three participants and alleged each made the same identified misrepresentations); *Pena v. Int'l Med. Devices, Inc.*, 2023 WL 5667538, *2 (C.D. Cal. Jan. 10, 2023) (complaint identified websites and social-media platforms carrying allegedly false advertisements and detailed each defendant's role).

The Complaint ties neither SEA nor SEC to specific conduct. It describes different roles for the two entities, Compl. ¶¶ 17–19, then attributes the conduct underlying each claim to "Defendants" collectively. *Id.* ¶¶ 43, 62, 70, 98, 107. Nor can Plaintiff claim that both entities did everything, given the uncertainty she acknowledges about which one produced the boxes. Opp'n at 29. That uncertainty is the defect: Rule 8 requires her to plead facts supporting each Defendant's liability,

not to sue a corporate family collectively and leave it to discovery to sort out who allegedly did what.

**b. Samsung's Count-by-Count Motion Shows the Complaint's Deficiency, Not Its Adequacy**

Plaintiff's argument that Samsung's Motion proves the Complaint provides adequate notice to SEC and SEA, as Rule 8 requires, because Samsung's Motion "addresses each count, identifies the allegations specific to each Defendant, and cites the paragraphs on which each claim rests," inverts the inquiry. Opp'n at 27. Rule 8 asks whether the Complaint itself gives each defendant fair notice, not whether a defendant can reconstruct an entity-specific theory from its own knowledge. That Samsung had to supply its own account of which entity plausibly did what is evidence of the deficiency, not proof of its absence.

**2. Incorporating Every Prior Count Buries the Allegations Supporting Each Claim**

None of the cases Plaintiff cites prevent the dismissal of a complaint whose final count drags in all 104 paragraphs preceding it.

*Meyer v. City of Clearlake* does not authorize the wholesale incorporation Plaintiff's Complaint employs. Plaintiff cites *Meyer* for the proposition that "plaintiffs may incorporate by reference the allegations of previous counts, so long as the claims are identified with sufficient clarity to enable defendants to frame a responsible pleading." Opp'n at 28. But *Meyer* addressed one count incorporating just ***one*** prior count. 2009 WL 799396, at *4 (N.D. Cal. Mar. 24, 2009). Here, each count incorporates ***all*** prior counts, so Count VIII sweeps in allegations supporting seven earlier causes of action, including unrelated copyright and trademark theories. Compl. ¶ 105. *Meyer*'s limiting principle—that incorporated material must remain relevant to the claim incorporating it—is not satisfied here.

Neither *Carr* nor *Espinosa* excuses incorporation that obscures each count's basis. Plaintiff argues that Samsung has not explained how incorporation prevents a

responsible answer. Opp'n at 28 (citing *Carr v. United States*, 2006 WL 3355098, at *5 (E.D. Cal. Nov. 17, 2006)). Samsung did explain: it showed that the successive incorporation carries unrelated copyright and trademark allegations into the right-of-publicity counts, obscuring which allegations support those claims. Mot. at 23. *Espinosa* does not help Plaintiff either. Opp'n at 28 (citing *Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017)). That complaint re-alleged factual paragraphs while keeping each count's basis clear. 2017 WL 1079553, at *5. The Complaint here does not do that.

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.* condemned this very structure, whatever the ground of its affirmance. Plaintiff notes that the court affirmed a merits dismissal rather than dismissing solely for shotgun pleading. Opp'n at 28 n.14. But the Eleventh Circuit still described a complaint with nine counts, each incorporating every preceding paragraph, as a "quintessential" shotgun pleading, explaining that this structure forced the court to sift through irrelevant allegations. 305 F.3d 1293, 1295–96 (11th Cir. 2002).

**3. Samsung Did Not Concede Direct Copyright Infringement, and the Complaint Never Identifies a Volitional Actor**

Plaintiff's claim that Samsung conceded direct infringement (Opp'n at 26) is incorrect because the Complaint never says which entity, if either, performed the volitional act direct infringement requires. Direct copyright infringement requires volitional conduct by the specific defendant alleged to have infringed, and the Complaint's undifferentiated references to "Defendants" never identify that defendant. Nor is volitional conduct required only of "passive systems like servers and ISPs" (Opp'n at 29 n.15); the Ninth Circuit treats it as a causation requirement of direct infringement generally. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). The argument goes to the substance of Count I as to both entities, and Samsung conceded nothing by presenting it alongside a broader pleading challenge.

## III. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint in its entirety.

FISH & RICHARDSON P.C.

Dated: November 13, 2026

*/s/ Thad C. Kodish*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640

Thad C. Kodish (admitted *pro hac vice)*
tkodish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Kristen McCallion (admitted *pro hac vice*)
mccallion@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

Attorneys for Defendants
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Defendants"), certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

*/s/* Thad C. Kodish
Thad C. Kodish